410 So.2d 821 (1982)
L. H. BOSSIER, et al., Plaintiffs and Appellees,
v.
S. Mark LOVELL, et al., Defendants and Appellants.
No. 8565.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1982.
Rehearing Denied March 23, 1982.
*822 Trimble & Associates, J. Michael Percy, Alexandria and Beard, Arceneaux & Sutherlan, Roy L. Beard, Shreveport, for defendants-appellants.
Gary & Field, Thomas R. Elkins and Russell L. Dornier, Baton Rouge, for plaintiffs-appellees.
Before DOMENGEAUX, DOUCET and LABORDE, JJ.
DOUCET, Judge.
This is a dispute among partners in a partnership in commendam named Quinn-L Corporation. Defendant-Appellant S. Mark Lovell, allegedly attempted to alienate partnership property without the authority of and to the detriment of the limited partners. Plaintiffs are limited partners who seek injunctive relief to block the sale of the partnership assets by the defendant general partners Lovell and Quinn-L Corporation on the basis that the latter parties' actions constitute a breach of their fiduciary and partnership agreement duties. From a judgment in favor of plaintiffs, defendants appeal. We affirm.
On February 18, 1974, a limited partnership known as "The Pines Apartments" was formed by execution of an "Agreement for Partnership in Commendam". Subsequently, plaintiffs-appellees, Mr. L. H. Bossier and his corporations L. H. Bossier, Inc. and Alexandria Construction Company, became interested in investing in the partnership as commendam or limited partners and the Articles were amended to effect certain changes including a renaming to "Quinn-L Corporation1974". Thereafter, on June 17, 1974, the partnership agreement was amended to actually admit the appellees into the partnership and limit their liability therein.
*823 In due course the enterprise built and operated one phase of an apartment complex known as "Tanglewood Terrace" near the City of Pineville, Louisiana. Due to poor market conditions, insufficient income was generated to meet expenses and the result thereof was a substantial tax shelter to the partners who were able to deduct their respective share of business expense, operating loss, and depreciation. Six years later the apartments were renting well, however, due to the structure's age certain improvements were required. According to defendant Lovell, the tax benefits are close to being exhausted and the partnership will begin to show an income, thereby terminating the tax shelter. The project had reached what Lovell referred to as the "cross-over point", and consequently he desired to restructure the partnership.
In September of 1980, Mr. Lovell met with Mr. Bossier concerning the restructuring of the partnership by admission of new partners and capital. The proposal was rejected. His restructuring plans having failed, Mr. Lovell felt at liberty to dispose of the partnership property. Accordingly, he entered into an agreement with a syndicate he had organized from the investors who proposed to buy into the partnership. On September 26, 1980, an "Agreement for Sale" was signed between said parties with a purchase price fixed at $1,780,000an amount representative of the true value according to defendant Lovell. The limited partners opposed the sale, maintaining that the purchasers, Q-L Investments, Inc. and Quinn-L Investments, Inc. are wholly owned by Lovell, and that the sale was to his personal advantage and allowed him to recoup loans advanced.
In October of 1980, a meeting was held by the commendam partners, without notice to the general partners, whereat the general partners were purportedly removed and the limited partners withdrew their power of attorney to sell real estate of the partnership. Thereafter, on November 11, 1980, another meeting was held, again without notice to the general partners, and the articles were allegedly further amended to prohibit the sale of property belonging to the partnership without the approval of the commendam partners.
On December 31, 1980, the partners in commendam filed suit alleging that the general partners had arranged to sell the partnership assets in violation of both the partnership agreement as amended, and fiduciary obligations, and sought injunctive relief prohibiting the sale. A temporary restraining order was obtained. The general partners responded with an Exception of No Cause of Action and a Motion to Dissolve the Temporary Restraining Order wherein damages for wrongful issuance were sought. Said pleadings alleged insufficient facts to justify injunctive relief and lack of a showing of irreparable harm. Plaintiffs then amended their Petition, alleging fraud on the part of the general partners, to which amendment the defendants filed a Motion to Strike such allegations of fraud.
All matters were consolidated for trial upon hearing of the Rule for Preliminary Injunction. The trial court found that the general partners' decision to sell the apartment project, which was the only asset of the partnership, violated a fiduciary duty owed the commendam partners and further violated the partnership agreement. Additionally, the trial court held that no demonstration of irreparable harm was necessary for the issuance of either the Temporary Restraining Order or the Preliminary Injunction as he found the actions plaintiffs sought to enjoin were reprobated by law.
The issues presented for consideration on appeal are whether the general partners had the legal authority to sell immovable property of the partnership without the approval of all partners and whether the grant of injunctive relief was proper.
The trial judge, in his well reasoned opinion, noted that the sole purpose of the partnership was to build and operate an apartment complex in Pineville. (Article 3 of the Partnership Agreement). He further recognized that Article 29 provided that the general partners may not do any act which would make it impossible to carry *824 on the ordinary business of the partnership without the written consent of all partners.[1] Additionally, Article 7 commends that the partnership shall not engage in any other business without the consent of all partners. Nonetheless, S. Mark Lovell, in his capacity as general partner, entered into a purchase agreement to sell the apartments to a corporation owned by himself, apparently relying upon Article 22(a)(i) which permits general partners the authority to sell or otherwise convey all or any portion of the partnership property. The trial judge noted that the aforementioned article created an ambiguity in the agreement inasmuch as it allows the general partners absolute authority to sell all partnership property notwithstanding that such would make it impossible to carry on the business of the partnership. He resolved the conflict by construing Article 22 as tempered by Articles 3, 7, and 29; a construction which would lead to no absurd consequences. Consequently, the action of defendants was not only a breach of fiduciary but also contractual duties. We agree and incorporate herein the following portions of the trial judge's opinion:
"It goes without saying that the relation among partners is fiduciary in character and imposes on the members of the firm the obligation of upmost [sic] good faith in their dealings with one another with respect to partnership affairs, of acting for the common benefit of all partners in all transactions relating to the firm business; and of refraining from taking any advantage of one another by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind. Henley v. Haynes, 376 So.2d 1030 (La.App. 1st Cir. 1979), writ denied, 377 So.2d 843; W. A. McMichael Construction Co. v. D. & W. Properties, Inc., 356 So.2d 1115 (La.App.2d Cir. 1978), writ denied, 359 So.2d 198 (La.); See also: LRS 9:3801(2); Comment, Symposium: A Survey of Louisiana Law of Partnerships; Part III, Rights and Obligations of Partners, 45 Tul.L.Rev. 367, 378-381.
Even with the deletion of those portions of paragraph 29 giving the in commedam [sic] partners a "veto" of the sale of partnership immovables, the actions of the general partners, in attempting the sale in the manner in which they had breached the partnership agreement. Paragraph one of Article 29 states that "(t)he General Partners may not, without the written consent of all of the Partners, do any act ... which would make it impossible to carry on the ordinary business of the Partnership..."
Articles 3, 7, and 22 make it clear that the only purpose of Quinn-L-1974 was to perate [sic] the Tanglewood Apartment complex. With these restrictions, it becomes patently obvious that by selling the apartment complex, the partnership could not possibly carry out its stated purpose. Furthermore, the clear intent of the general partners was to squeeze out the plaintiff partners. While the factual situations are not exactly analagous, the reasoning behind the Noe v. Roussel decision applies here. "... (A)n agent who acquires his principal's property, or one who otherwise acts in a fiduciary capacity, bears the burden of establishing that the transaction was an arm's length affair. This means that the agent or fiduciary must handle the matter as though it were his own affair. It also means the agent or fiduciary may not take even the slightest advantage, but must zealously, diligently and honestly guard and champion the rights of his principal against all other persons whomsoever, and is bound not to act in antagonism, opposition or conflict with the interest of the principal to even the slightest extent." 310 So.2d 806, 818 (La.1975).
It appears elementary that an agent, acting in that capacity, who purports to sell his principal's property to another entity organized and controlled by himself, especially where his principals are not specifically advised of the proposed sale and/or all the *825 pertinent details, has an extraordinary burden of proving such a transaction was done at arms length and for the benefit of his principal. Defendants have failed to meet that burden. Any transaction that was a clear benefit to the in commendam partners and to the partnership entity was certainly one which could and should have been conducted with the full and informed knowledge and consent of all interested partners. This court has little more than the bare assertions of Mr. Lovell that his actions were in the best interest of the partnership and the limited partners, and this assertion is one hotly contested by those limited partners. Any "secret agreements" or "subsequent verbal understandings", regardless of how the parties choose to characterize them, aside, the written agreement does not give the general partner carte blanche to deal with the partnership assets in any manner he so chooses. There were limits to his authority, and he clearly transcended those limits in attempting to sell the partnership assets without full consultation and consent of the in commendam partners, since to do so would effectively end the partnership. The loss of the subject of the partnership (whether by destruction or sale seems irrelevant) dissolves the contract of partnership. LSA-C.C. Articles 2876(2), 2879; Claiborne v. Their Creditors, 18 La. 501 (1841).
Article 3(b) permits the Partnership to sell "such property and the improvements built thereon" but the general partners are specifically prohibited from doing "any act... which would make it impossible to carry on the ordinary business of the Partnership..." Article 29. This court finds it somewhat difficult to invision how "Quinn-L Corporation-1974" would continue... "to hold, improve, maintain, operate and lease" something it would no longer own, and Article 7 expressly prohibits engaging in any other business without the prior consent of all of the Partners.
Article 22(i) can be read to create a patent ambiguity on the face of the agreement because it expressly provides that the general partners have "the right to sell ... all or any portion of the property" yet the absolute authority to sell all of the partnership assets would give the general partners the absolute authority to end the partnership and to make it impossible to carry on the ordinary business of the partnership. Both propositions cannot stand in the same agreement. The intent of the parties is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences. LSA-C.C. Article 1945(3); Makofsky v. Cunningham, 576 F.2d 1223 (C.A. 5 La., 1978); Ainsworth v. Association Life Insurance Co., 325 So.2d 708 (La.App. 4th Cir., 1976) cert. den. 328 So.2d 105 (La.). It is only where the agreement is unclear, ambiguous or will lead to absurd consequences that a court should go beyond the written agreement to determine the true intention of the parties. Bohm v. CIT Financial Services, Inc., 348 So.2d 132 (La.App. 1st Cir., 1977) writ denied, 350 So.2d 673 (La.).
The restrictions mentioned in Article 22, i.e., Article 28, should be considered as a error and that Article 29 was intended. In that event, the authority granted in Article 22 must be tempered with the proviso that no action by the general partner that would make it impossible to carry on the ordinary business of the partnership, without the express approval of all of the partners, is legal. The agreement, after all, is the law as between the parties, LSA-C.C. Article 1901, unless contrary to law or public morals. Wilson v. Southern Bell Tele. & Tel. Co., 194 So.2d 739 (La.App. 1st Cir., 1967).
Therefore, the partnership agreement cannot be interpreted so as to permit the sale of all of the partnership assets without the express consent of all of the partners notwithstanding the deletion of that portion of Article 29 which had previously required such consent. This is true whether or not a sale is in the best interest of the partnership entity and the individual partners. This court makes no finding one way or the other on that issue but only finds that the manner of the sale violated the fiduciary duty owed by the general partners to the limited partners.
*826 A related issue is the authority of the limited partners to take the actions that they have.
A partnership is a separate legal entity, distinct from the persons comprising it, LaCoste v. C. and C. Contractors, 328 So.2d 802 (La.App. 1st Cir., 1976), and the funds and property of the partnership are owned by the partnership entity, State v. Morales, 256 La. 940, 240 So.2d 714 (1970). (The Civil Code Articles on Partnership were amended effective January 1, 1981, and are therefore inapplicable, per se, to this dispute. However, where the new versions do not change the law they will be used for the sake of clarity. A partnership in commendam, or limited partnership, consists of one or more general partners who have the powers, rights, and obligations of partners, and one or more partners in commendam, or limited partners. LSA-C.C. Articles 2828, 2840 (new Article 2837). The limited partner must contribute to the partnership money, things or the performance of nonmanagerial services, LSA-C.C. Articles 2841, 2842 (new Article 2840), but a partner in commendam does not have the authority of a general partner to bind the partnership, to participate in the management or administration of the partnership, or to conduct any business with third parties on behalf of the partnership. LSA-C.C. Articles 2844-2848; Ray's Appliance & Air Conditioning Services, Inc. v. K. & D. Enterprises, Inc., 350 So.2d 228 (La.App. 3rd Cir., 1977), writ denied, 352 So.2d 1032 (La.); new Article 2843. A violation of this rule subjects the limited partner to the same liabilities as a general partner. LSA-C.C. Articles 2844, 2849(2); new Article 2844.
First, Article 22(d) of the partnership contract contains an "irrevocable mandate" in favor of the general partners. Petitioners question, in brief, the validity of any "mandate" to sell partnership immovables. I do not view these objections as having any merit but because I believe that the contract granted no unilateral authority to the general partners to conduct such a sale (for reasons other than on points of agency law) they need not be considered in detail. In any event, whatever "mandate" that does exist is certainly not irrevocable. Civil Code Article 3028 provides in pertinent part:
"Except in the cases of irrevocable powers of attorney, as described in the preceding article, the principal may revoke his power of attorney, whenever he thinks proper, ..."
To constitute a mandate of the class that is coupled with an interest sufficient to make the mandate irrevocable, the interest of the agent in the subject matter of the agency must be such as to give the agent the right to deal with the res in his own name. LSA-C.C. Article 3027; Succession of Zatarain, 138 So.2d 163, 166 (La.App. 1st Cir., 1962); Renshaw v. His Creditors, 40 La.Ann. 37, 3 So. 403 (1888). The Court used the term "procurator in rem suam" which Black's Law Dictionary, 5th Ed., p. 1087, defines as an attorney in his own affair, or with reference to his own property. This is hardly the situation here since defendants act only in a representative capacity to property owned by the partnership entity and not of any partner. Therefore, the "irrevocaable [sic] mandate" contained in Article 22(d) is of no effect.
Second, although the limited partner's role in the business is very circumscribed, at best, there are actions he may take. The comments under amended Article 2843 state:
"This article continues the basic principle that a partner in commendam may not exercise the same rights and privileges available to a general partner. His role is that of a passive contributor whose powers are generally restricted to the protection of his interest."
This Article does not present a change in our partnership law but is derived from Civil Code Articles 2844 and 2849. Furthermore, Articles 2845 and 2848, as amended, detail the actions a limited partner may engage in without subjecting himself to general partner liability. Although derived from section 303 of the Uniform Limited Partnership Act, these provisions appear to be in line with Louisiana jurisprudence on *827 the subject. (e.g. Ulman v. Briggs, 32 La. Ann. 655 (1880)). Specifically, the new Article 2846 would permit a limited partner to advise and consult with a general partner on business matters of the partnership and approve or disapprove an amendment to the contract of partnership while new Article 2847 would permit a vote by a limited partner for the continuation, dissolution, or liquidation of the partnership, the alienation, lease, or encumbrance of all, or substantially all, the assets of the partnership other than in its ordinary course of business; the admission, explusion or withdrawal of partners; or the selection or removal of managing partners. Therefore, petitioners were well within their authority to block the sale and vote to remove defendants from their managerial status."
The issue of the validity of the limited partners' removal vote of the general partners was not argued at the trial level, nor has it been argued on appeal, thus it is considered abandoned.
The question remains whether the grant of injunctive relief was proper. The trial judge, upon considering the verified petition of plaintiffs, was satisfied that immediate and irreparable injury, loss and damage will result to the plaintiffs by virtue of the threatened sale of immovable property owned by the partnership, and accordingly entered a temporary restraining order against defendants enjoining them from selling the property in dispute. However, in his written Reasons for Judgment the trial judge reasoned that no showing of irreparable harm was necessary as the contract was the law between the parties and the action to be enjoined was reprobated by law. He reached this result by relying upon cases to the effect that a showing of irreparable injury is a prerequisite to injunctive relief only where the actions to be enjoined are lawful. Salter v. B.W.S. Corporation, Inc., 290 So.2d 821 (La.1974); Bardwell v. Parish Council, 44 So.2d 107 (La.1949); Caffery v. Powell, 320 So.2d 223 (La.App. 3rd Cir. 1975); Whalen v. Brinkmann, 258 So.2d 145 (La.App. 1st Cir. 1972); Wachsen v. Commission Council of Lake Charles, 162 La. 823, 111 So. 177 (1926); Connell v. Commission Council of City of Baton Rouge, 153 La. 788, 96 So. 657 (1923). Although the above cited cases dealt with injunctive relief, the trial court found no distinction between the temporary restraining order and preliminary injunction insofar as issuance to prevent a party from a course of action reprobated by law. Alternatively, the trial judge opined that damages for wrongful issuance were not warranted.
We agree with the trial judge that, if a plaintiff can show that a defendant's conduct, interfering with the right of property ownership, is clearly forbidden by law, as was shown herein by the partnership contract between the parties, then plaintiff is entitled to a temporary restraining order enjoining the illegal acts of defendant without proof of irreparable injury.
For the above and foregoing reasons the judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.
LABORDE, and DOMENGEAUX, JJ., concur in the result.
NOTES
[1] Originally this article expressly prohibited the general partner's sale or exchange of real estate without the consent of all partners, however, this requirement was deleted upon entry of the limited partners. The limited partners later attempted to reinstate this limitation on the general partners' powers at the aforementioned meeting of November 11, 1980.