611 So.2d 632 (1992)
Donald J. PALMISANO, Robert E. Ruel, Kenneth L. Veca, John E. McLachlan, and Gerald R. LaNasa, as Trustee for Gerald R. LaNasa, M.D., et al.,
v.
John L. MASCARO, Individually and as General Partner of the Lake Forest Boulevard Medical Development, a Partnership in Commendam.
No. 90-CA-0819.
Court of Appeal of Louisiana, Fourth Circuit.
January 16, 1992.
On Rehearing December 15, 1992.
Writ Denied March 19, 1993.
*633 Russ M. Herman, John B. Loweb, Herman, Herman, Katz & Cotlar, New Orleans, for defendant-appellee.
Phillip A. Wittmann, Kyle Schonekas, Nole J. Darce, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, for plaintiffs-appellants.
Before BYRNES, and WARD, JJ., and HUFFT, J. Pro Tem.
BYRNES, Judge.
Plaintiff Donald Palmisano, and Gerald LaNasa, as trustees for Gerald LaNasa, Ralph Sagrera, and Baptiste Brunner, appeal several aspects of the trial court's decision on the dissolution of their partnership with the defendant John Mascaro. We affirm in part, and remand in part.
In the mid-nineteen seventies a group of physicians wished to design and construct a medical office building to serve primarily the needs of the participating physicians. In order to begin this project, they formed a partnership in commendam. The physicians were designated as limited partners and John Mascaro, a real estate developer, was designated as sole general partner. The language of the partnership agreement empowered the general partner to do all *634 manner of things that he deemed "necessary, advisable and proper", and granted advance ratification and approval of the general partner's actions, without exception or limitation. Thus, the general partner was afforded absolute, total, and complete authority to conduct the dealings of the partnership.
In 1974, the partnership purchased a tract of land near Methodist Hospital. The partnership attempted to have the property rezoned but were unsuccessful due to opposition from surrounding medical office owners. Mr. Mascaro, unable to carry forward with the original construction plans, arranged to sell the land in 1978. Upon learning of Mr. Mascaro's plan to sell the land in 1979, the limited partners, sued to dissolve the partnership, and filed a notice of "lis pendens" on the land to halt any possible sales.
In 1980, Mr. Mascaro filed an action to cancel the notice of lis pendens and was successful. This court affirmed that decision. Palmisano v. Lake Forest Boulevard Medical Development, 425 So.2d 905 (La.App. 4th Cir.1983). Subsequently, Mr. Mascaro sold divisions of the property in separate deals.
The limited partners then filed civil suit against Mr. Mascaro seeking damages, contending Mr. Mascaro breached his fiduciary duty in his conduct surrounding the sale of the property. Mr. Mascaro reconvened, contending damages due to the bad faith conduct of the limited partners in interfering with the partnership business dealings. The trial court found in favor of Mr. Mascaro and awarded $189,759.77 in damages in the following amounts:

Delay $ 2,500.00
Quantum Meruit $45,000.00
Loss of Interest $97,259.77
Attorney's Fees $45,000.00

This award was offset against the undistributed partnership assets yet to be transferred to the limited partners. From that decision, the limited partners appeal.

ASSIGNMENTS OF ERROR
Plaintiffs Dr. Palmisano, Dr. LaNasa, and others, (the "limited partners") present several claims of errors in the trial court's decision. The limited partners initially contend that Mr. Mascaro breached his fiduciary duty. They further claim that the trial court erred: (1) in finding liability against the limited partners for the wrongful filing of a notice of lis pendens; (2) in awarding quantum meruit damages and attorney's fees; (3) in deducting these damages and fees awarded from the undistributed partnership assets; and (4) by denying the limited partners interest on the amounts due them.
In their first assignment of error, the limited partners contend that the general partner, Mr. Mascaro, breached his fiduciary duty to the partnership.
In its reasons for judgment, the trial court stated:
"LSA-Civil Code Article 1901 is very specific: Agreements legally entered into have the effect of laws on those who have formed them. In following this language our Courts have declared that parties are free to make their own contracts, and however unusual they may be or what drastic or unreasonable features may be therein, they should be enforced so long as they do not contravene good morals or public policy." Roos v. Dole [Dale], 234 So.2d 489 (La.App. 3rd Cir. 1970); Arkansas Fuel Oil Corporation v. Maggio, 141 So.2d 516 (La.App. 4th Cir.1962).
Also, as the trial court stated in its reasons, "[e]ven a cursory review of the `Agreement' demonstrates clearly that the partners intended that the general partner could act on behalf of the partnership as he in his sole discretion deemed appropriate." The partnership agreement gave the general partner absolute authority in making decisions and taking actions with the partnership assets. The general partner's actions were granted advance ratification without exception or limitation. This broad grant of authority to the general partner was freely entered into and is not against public policy.
Arkansas Fuel Oil Corporation v. Maggio, supra; 141 So.2d at 520 relied on by the trial court, states:

*635 "The policy of the law is that all men of lawful age and competent understanding shall have the utmost liberty of contracting, and their contracts, when freely and voluntarily made, are not lightly to be interfered with by the courts.... The court is not concerned with the wisdom or the folly of the contract.... The contract in this respect may be a hard one for the defendant, but it is one that the parties were competent to make and had the right to make. It is the law between them and the court has no alternative except to enforce it as written." (Emphasis added.) See also Groom v. W.H. Ward Lumber Co. Inc., 432 So.2d 984 (La.App. 1st Cir.1983); Louisiana Power & Light Co. v. Mecom, 357 So.2d 596 (La.App. 1st Cir.1978).
The limited partners cite the case of Bossier v. Lovell, 410 So.2d 821 (La.App. 3rd Cir.1982), concerning the fiduciary obligation of the general partner, as requiring the general partner to give full consultation and gain consent of the in commendam partners, to sell partnership assets. However, in Bossier, the partnership agreement gave the general partner absolute authority for the specific purpose of building and operating an apartment complex. The Bossier agreement specifically provided that the general partner could not do any act which would make it impossible to carry on the ordinary business of the partnership without the written consent of all the partners, and that the partnership shall not engage in any other business, other than its purpose, without the consent of all its partners. Id. at 823-824. In the agreement before us, the purpose of the partnership, to be carried out by the general partner, is to "acquire, hold, sell, subdivide, lease ..." the property. (Emphasis added.) The provisions of this agreement are not ambiguous, and the agreement does not include provisions similar to those in Bossier. Thus, Bossier has no bearing here.
Also, the limited partners contend that Mr. Mascaro violated his fiduciary duty in "not dealing at arm's length" with them and acting secretly behind their backs. The limited partners specifically refer to Mr. Mascaro's dealings with his brother-in-law and ten percent shareholding partner, Bernard Frischhertz. However, Mr. Mascaro was authorized to take any action he felt necessary without the necessity of consulting the limited partners. Specifically, he was authorized to "grant, bargain, sell, assign, set over, convey, deliver, sub-lease, mortgage, ... said property in any manner,... for such amounts and on such terms and conditions, in such forms of instruments, and with such conditions, provisions and stipulations as said General Partner shall in his sole and uncontrolled discretion, deem necessary, advisable or proper." (Emphasis added.)
This court, in consideration of Mr. Mascaro's dealings with Mr. Frischhertz, his brother-in-law, must look at article 14(c) of the agreement which states:
The fact that the General Partner or a member of his family is directly or indirectly interested in or connected with any person, firm or corporation employed by the Partnership to render or perform a service, or from which or whom the partnership may buy merchandise or other property, shall not prohibit the General Partner from employing such person, firm or corporation or from otherwise dealing with it.
Mr. Mascaro's actions, as a fiduciary, seem suspect. He sold the land to a relative at a bargain price which was one-third below optimum market value. However, this court can not find that Mr. Mascaro breached his fiduciary duty in light of the agreement's provisions granting him absolute authority and discretion. Also, Mr. Mascaro held a twenty percent interest in the partnership and stood to lose more than most of the other partners because of these questionable dealings. Therefore, this court cannot find the trial court erred in concluding that Mr. Mascaro did not breach his fiduciary duty to the partnership. Thus, this assignment has no merit.
In their second assignment of error, the limited partners contend that the trial court erred in finding them liable for the wrongful filing of a notice of lis pendens. This court has previously determined that the *636 filing of the notice of lis pendens was improper. Palmisano, supra. The limited partners assert that they acted with probable cause and on the advice of counsel, therefore without malice. Thus, they claim that damages cannot be due Mr. Mascaro, relying on Dane v. Doucet Bros. Construction Co., 396 So.2d 418 (La.App. 4th Cir. 1981). However, the trial court was very specific in its determination that the limited partners acted with malice toward Mr. Mascaro.
In its reasons for judgment, the trial court described the manner of Dr. LaNasa during testimony, stating:
"His manner was aggressive and boastful, almost to the point of demonstrating a disdain for the orderly processes of the law.... His bad faith was not only expressed by his words but by his manner of testifying; facial expressions as well as eye and body movements.
Even so, the limited partners contend that they filed the notice of lis pendens on the advice of their attorney. The trial court found that the attorney of the limited partners, Mr. LeBlanc, warned them of the consequences of filing a notice of lis pendens, but that they desired "to pursue this course of action despite the possible consequences." Louisiana C.C.P. art. 3751 provides notice of lis pendens to alert third parties to the pendency of an action or proceeding "affecting the title to, or asserting a mortgage or privilege on, immovable property...." The limited partners filed notice of lis pendens although there was no action or pending proceeding that concerned title to the property. The essential elements of abuse of process are ulterior purpose and willful act in the use of the process not proper in the regular prosecution of the proceeding. Eicke v. Eicke, 517 So.2d 1067 (La.App. 3rd Cir.1987); Goldstein v. Serio, 496 So.2d 412 (La.App. 4th Cir.1986), writ denied 501 So.2d 208 and 501 So.2d 209 (La.1986). Malice can be inferred from a lack of probable cause. Breda v. Attaway, 371 So.2d 1270 (La.App. 3rd Cir.1979). The applicable standard of review requires that we give great weight to the factual conclusions of the trier of fact, in this case the trial judge. Mascaro v. Davis, 420 So.2d 755 (La.App. 4th Cir. 1982). Absent the showing the trial court's finding were manifestly erroneous, its findings of fact must be accepted by this court. Gordon v. National Union Fire Ins. Co. of Pittsburgh, 449 So.2d 152 (La.App. 4th Cir.1984).
Because this court has already determined in Palmisano that there was no basis to file a lis pendens action against Mr. Mascaro and the trial court found that the general partners, based on their testimony, acted with malice toward Mr. Mascaro, the trial court could award damages. Since the limited partners have not shown the trial court's factual determination was manifestly erroneous, the trial court did not err in awarding damages based on its determination of malice with no probable cause. Therefore, this assignment of error has no merit.
In their third assignment of error, the limited partners contend that the trial court erred in the granting the award for quantum meruit damages and attorney fees. The limited partners contend that Mr. Mascaro should not receive quantum meruit damages for services rendered on behalf of the partnership, because he had agreed to act as general partner without compensation other than the profits received from his partnership investment. The trial court awarded Mr. Mascaro $45,000 quantum meruit damages based on additional services of $5,000 per year for the nine years from the filing of the notice of lis pendens by the limited partners until the time of trial. The trial court stated:
"... this court accepts the uncontradicted testimony of Mr. Mascaro, in that he was a successful land dealer and that in the instant case he caused the partnership to reap a tremendous profit despite the unwarranted actions of two of the limited partners."
The trial court determined that Mr. Mascaro was denied the opportunity to attend to his own business because of the limited partners' actions, which were performed in bad faith against their general partner and the contract. "Quantum Meruit is appropriate *637 where defendant is enriched by plaintiff's time, talent, labor and material or where plaintiff's efforts inure to defendant's benefit, under such circumstances as imply an obligation to pay for the service thus rendered to plaintiff. Fullerton v. Scarecrow Club, Inc., 440 So.2d 945, 949-950 (La.App. 2nd Cir.1983). Quantum meruit is an equitable doctrine, based on the concept that no one who benefits by the labor and materials of another should be unjustly enriched thereby." Alexis v. Pacaccio, 410 So.2d 867 (La.App. 4th Cir.1982). See also La.C.C. art. 2055. The contract between Mr. Mascaro and the limited partners did not contemplate additional compensation, other than profits, for the general partners, but it also did not contemplate the bad faith actions which provided over nine years of litigation on the part of the limited partners against Mr. Mascaro. Due to equity and the bad faith actions of the limited partners, this court cannot find the trial court erred in awarding Mr. Mascaro quantum meruit damages.
Also, the limited partners contend that the trial court erred in awarding attorney's fees to Mr. Mascaro, absent authorization by statute or the contract between the parties. We must agree. Louisiana jurisprudence supports, and this court has stated, that "attorney's fees are not allowed except where authorized by statute or agreed to by contract." Dane v. Doucet Brothers Construction Co. Inc., 396 So.2d 418, 421 (La.App. 4th Cir.1981). Huddleston v. Bossier Bank and Trust Co., 475 So.2d 1082 (La.1985) Dane concerned an action to collect attorney's fees based on the cancellation notice of an improper lis pendens filed by the defendants. In Dane, the plaintiff relied on Lacour v. Merchants Trust and Savings Bank, 153 So.2d 599 (La.App. 4th Cir.1963), writ refused 244 La. 1004, 156 So.2d 56 (1963) and 244 La. 1007, 156 So.2d 58 (1963), which concerned this Court's award of attorney's fees based on a bank's responsibility for the failure to cancel a mortgage note. But the court, in Dane, distinguished Lacour on its facts.
Mr. Mascaro contends that the award of attorney's fees could be based in the contract's provisions indemnifying the general partner for any losses incurred in acting on behalf of the partnership. If attorney's fees are contemplated as an element of damages in case of a breach, the contract should say so explicitly. Morein v. G.J. Deville Lumber Co., 215 So.2d 208 (La. App. 3rd Cir.1968). This indemnification provision is not explicit enough in the contemplation of attorney's fees for us to base an award upon it.
In their fourth assignment of error, the limited partners contend that the trial court erred in denying them interest on their respective partnership distributions owed them and in deducting Mr. Mascaro's damages award from the undistributed partnership assets. Mr. Mascaro's reconvened both in tort and in contract, based on the limited partners' bad faith actions. This court determined that the trial court did not err in its award of damages based on its finding of malice in the filing of the notice of lis pendens. These damages are based on the contract between Mr. Mascaro and the limited partners.
Article 1893 of the Louisiana Civil Code provides:
Compensation takes place by operation of law when two persons owe to each other sums of money or quantities of fungible things identical in kind, and these sums and quantities are liquidated and presently due.
In such a case, compensation extinguishes both obligations to the extent of the lesser amount.
The trial court awarded damages of delay and quantum meruit dated from the bad faith filing of the notice of lis pendens in 1979. The limited partners "actively" breached the contract and thus owed Mr. Mascaro damages from the date of the breach without the need to be put in default. LSA-C.C. art. 1994. In its judgment, the trial court awarded the limited partners $65,635.00 each for their respective partnership shares after disposition. However, it offset this award with Mr. Mascaro's award of $189,759.77 which we have reduced to $144,759.77. The limited partners did not sue for interest in their *638 demand for distribution of the partnerships assets, and the trial court awarded none. We do not find error in the trial court's award, or offsetting of awards. Thus these assignments have no merit.

CONCLUSION
The trial court did not err in finding Mr. Mascaro did not breach his fiduciary duty, or in finding liability against the limited partners for maliciously filing an improper notice of lis pendens. While the trial court did not err in awarding quantum meruit damages, it can not grant attorney's fees in this case due to the lack of provision in the agreement. Finally, the trial court did not err in not awarding the limited partners interest and then off setting the awards against each other.
The award for attorney's fees is vacated. The trial court's award of $189,759.77 is reduced to $144,759.77. In all other respects, the decision of the trial court is affirmed.
AFFIRMED AS AMENDED.
HUFFT, J., concurs in results.
WARD, J., dissents with reasons.
WARD, Judge, dissenting.
I respectfully dissent.
In a partnership in commendam, the appointment of a general partner imposes a duty of fidelity between the general partner and the limited partners. It is presumed the general partner will act to the benefit of all the partners.
The facts of this case lead me to conclude that Mr. Mascaro breached the duty imposed by his position as general partner and for that reason I would reverse.
HUFFT, J., concurs in the results.
Before LOBRANO, WARD and JONES, JJ.

ON REHEARING GRANTED
WARD, Judge.
In the first hearing, a panel of this court rendered an opinion that would affirm the trial court judgment with one judge dissenting. A rehearing was granted, and we now vacate this court's first opinion.
This is an appeal from a trial court judgment rendered in the second of two lawsuits filed by limited partners of a partnership in commendam. In the first suit, the limited partners sued the partnership, Lake Forest Boulevard Medical Development and its general operating partner, John Mascaro, seeking a dissolution of the partnership and a distribution of the assets. After filing suit they filed a notice of lis pendens in the Mortgage Office for the Parish of Orleans. On motion of the general partner the trial court issued a mandamus ordering the notice removed from the records. This court affirmed, and the Supreme Court denied writs. The first suit has been abandoned.
After the trial court ordered the notice removed from the records, and after this court affirmed, a second suit was filed by five of the eight limited partners. In that suit they again sued the partnership and its general partner, John Mascaro, and again sought dissolution of the partnership and distribution of its assets, but they also sought damages from Mascaro for breach of fiduciary duty to the limited partners. Mascaro reconvened, alleging the limited partners abused legal processes in the first lawsuit by the filing of the notice of lis pendens which Mascaro claims caused him damages.
After the filing of the second suit, three of the five limited partners who were plaintiffs in this lawsuit, and the general partner settled their differences. However, Dr. Palmisano and Dr. LaNasa did not. The case proceeded to trial before the judge on the main demand and on the reconventional demand of Mascaro.
The trial court rendered judgment in favor of Mascaro, the general partner, awarding damages for abuse of process by the filing of the notice of lis pendens. The trial court also awarded Mascaro as general partner compensation for managing the partnership during the litigation of the first and second lawsuit, granting relief on the grounds of quantum meruit. In addition, *639 the trial court awarded attorney's fees to the general partner and assessed costs of this litigation to the limited partners.
At the same time, the trial court denied the limited partners' claims that the general partner breached a fiduciary duty causing them damages. As to the limited partners' partnership funds, the trial court awarded the limited partners the sums they claimed as their share of partnership funds, but denied their request for interest. The court then offset the amount awarded to the limited partners against the damages, compensation, and attorney's fees awarded to the general partner, and after the offset, the trial court rendered judgment in favor of Mascaro and against Palmisano and LaNasa in solido for $58,389.77.
Palmisano and LaNasa have appealed and Mascaro has answered the appeal, requesting modification of the judgment to increase attorney's fees.
We affirm in part, reverse in part, and render judgment.
As to the general partners' reconventional demand, we agree with the trial court that the partnership is entitled to damages for the abuse of process. However, we disagree with the trial court's award of compensation to the general partner for management of the partnership, and we disagree with its award of attorney's fees to the general partner.
As to the main demand, we find that the general partner breached his fiduciary duty to the partnership, causing damages by this breach. We agree with the trial court as to the award of money due the limited partners through dissolution of the partnership. However, we believe that the limited partners are entitled to interest from the date the partnership agreement required distribution of their share.
Lake Forest Boulevard Medical Development was a partnership in commendam formed for the purpose of constructing an office building and clinic for the use and occupancy of those limited partners who were physicians. Under the partnership agreement Mascaro was the general partner, and Bernard Frischhertz, Jr., who was Mascaro's brother-in-law, and a group of physicians, including the plaintiffs were limited partners. The agreement was amended several times but ultimately the ownership shares were divided into forty so that shares of 5% could be purchased. Ultimately, after Mascaro and Frischhertz purchased the shares of several of the original limited partners, Mascaro owned 45%, Frischhertz owned 20%, and seven limited partners who were physicians owned 35%, or 5% each. Under the agreement, the only purpose of the partnership was to purchase and develop a tract of ground on Lake Forest Boulevard, and the tract was described in the agreement. It fronted on Lake Forest Boulevard, and it was adjacent to an existing building occupied by physicians, medical clinics, and related businesses.
In December of 1974 the partnership purchased the tract of ground for $456,857.30. At the time of purchase, City zoning codes did not permit development of the property for medical offices, and the partnership applied to the City for rezoning to permit development. That application was opposed by some of the surrounding property owners. The most vocal was the owner of the adjacent property, a partnership in commendam composed of physicians who occupied the building. The general partner of that partnership was Mr. Frank Rabito, an attorney and real estate developer who owned Rabca, a real estate firm. He appeared at zoning hearings opposing a zoning change. Rezoning was effectively blocked.
Mascaro employed counsel to aid in rezoning, and after they were unsuccessful Mascaro himself negotiated with the opponents, including Frank Rabito. Mascaro was successful and Rabito agreed not to oppose rezoning. In exchange, Mascaro agreed to list the property for sale with Rabito's real estate business, Rabca, and on December 26, 1978, Mascaro, as the general partner, executed the listing agreement with Rabca. The agreement was an exclusive listing, providing for a 10% commission if the property was sold, and the agreement could be renewed by Rabca for six month periods without limitation as to *640 the number of renewals. However, after one year, Mascaro could terminate the agreement by payment of $25,000.
When Rabito did not oppose a change in zoning, the City Council passed an ordinance changing the property's zoning and the Mayor approved it. The zoning change approved June 10, 1979, permitted development of the property for a medical complex.
On July 31, 1979, Mascaro executed a written agreement to sell a portion of the partnership property to his brother-in-law, Bernard Frischhertz. The price was $6.65 per square foot, and a large 30' × 263' tract subject to a utility servitude was free of charge. The act of sale was to take place one year later after the real estate listing with Rabca terminated. Frischhertz gave Mascaro $25,000 as a deposit, enough to pay Rabca the termination fee. This was never posted on Lake Forest partnership books.
Mascaro notified the limited partners of the zoning change and listing with Rabca after he had entered into the agreement with Frischhertz, but neither Mascaro nor Frischhertz ever told either Rabca or the other limited partners of the agreement to sell a part of the property until 1982, more than three years after it had been signed. In the meantime, the limited partners sought division of the property, and even offered to buy a part of the property, but Mascaro did not respond directly, and deferred to the real estate agreement with Rabca which meant the limited partners could buy the whole parcel for $6.65 plus 10% commission, or $7.30 per square foot.
Upon learning of the terms of the listing agreement, six of the seven limited partners requested Mascaro to terminate it; and when he did not, six limited partners, including Drs. Donald J. Palmisano and Gerald R. LaNasa, filed the first lawsuit. The limited partners also filed a notice of lis pendens against the property to prevent Rabca from selling it.
Mascaro succeeded in having the lis pendens cancelled in 1983. This Court ruled that a lawsuit to terminate the partnership did not support the recordation of a notice of lis pendens. See Palmisano v. Lake Forest Boulevard Medical Development, 425 So.2d 905 (La.App. 4 Cir.1983).
After this there were settlement negotiations, and during negotiations the limited partners tried to buy Mascaro's share. He said he would not take less than $10.00 per square foot. He also wanted damages for loss of interest.
Because of the litigation in the first suit, and the filing of notice of lis pendens, the sale to Frischhertz was delayed and the sale to Frischhertz was not executed until March 30, 1983. The act of sale had the same terms as the agreement to sell, and Frischhertz paid $673,167.86 or $6.65 per foot. The adjacent tract, a 30' by 200' strip subject to a utility servitude, was given free to Frischhertz. Little more than 60 days later, on June 9, 1983, the remainder of the partnership property was sold to Raymond Clyde Abercrombie, Frank J. Mohre and Dennis Michael Scheuermann for $10.15 per square foot or a total of $1,241,072.00. On June 9, 1983 the partnership accountant rendered his accounting allocating at an after debt value of $65,665.00 for each five percent share in the partnership. Mascaro refused to distribute funds to the limited partners, and they filed this second suit to recover their share of the partnership proceeds plus interest and damages, claiming that Mascaro breached his fiduciary duty as a general partner through the sale to his brother in law for an amount far below market price. Mascaro in turn transferred the limited partners funds from the partnership account to his personal account.
Turning first to Mascaro's reconventional demand, because that is the judgment first appealed, Mascaro reconvened against Palmisano and LaNasa claiming compensation damages for their improper use of processes of court in the first lawsuit by filing a notice of lis pendens. He also claimed compensation for those services rendered on behalf of the partnership which he alleges were additional managerial services caused by the first lawsuit.
On the reconventional demand, the court awarded Mascaro $2,500.00 for "delay *641 (general)", $45,000 in quantum meruit for services rendered the partnership, loss of interest of $97,259.77 and $45,000 in attorney's fees for a total of $189,759.77 in solido. After off-setting Palmisano and LaNasa's claim for their partnership share, the court rendered judgment in favor of Mascaro in the amount of $58,389.77 plus interest, costs and $250.00 for each expert testifying at trial.
Palmisano and LaNasa now concede that filing of a notice of lis pendens was improper. However, they argue that because they filed notice of lis pendens in good faith, without malice, on advice of counsel, and with probable cause, these damages are non-recoverable, and they rely on Dane v. Doucet Bros. Construction Co., Inc., 396 So.2d 418 (La.App. 4 Cir. 1981) We agree that Dane stands for this very proposition. However, under the facts of this case Dane is inapplicable.
Malice can be inferred from lack of probable cause. Breda v. Attaway, 371 So.2d 1270 (La.App. 3 Cir.1979). It can also be inferred from the facts, and in this case the manner in which lis pendens was filed, the studied decision not to send notice of it to Mascaro, or his counsel, and other factors support the trial court's finding in this instance. In its reasons for judgment the Court noted:
There is no doubt in this court's view that the evidence adduced at trial indicates clearly that the plaintiffs acted malevolently and with unwarranted recklessness * * * This Court is convinced that the actions of plaintiffs in filing the lis pendens was not merely improvidently issued but was with malice, and therefore damages are recoverable.
The appellants' "advice of counsel" argument was rejected by the trial court:
Upon hearing the pertinent testimony [of plaintiffs' attorney] on this point, this Court concluded that Mr. LeBlanc did not lead his clients, he merely suggested the possibility of lis pendens, but declared unequivocally that he pointed out the possible consequences. Weighing the testimony of Drs. Palmisano and LaNasa, as well as that of their earlier attorney, Mr. LeBlanc, the Court finds that their actions spoke equally with willfulness as their words. This Court specially finds that the filing of the lis pendens constituted an abuse of process.
La.C.C.P. art. 3751 provides that the notice of lis pendens is to alert third parties to the pendency of an action or proceeding "affecting the title to, or asserting a mortgage or privilege on, immovable property..." The limited partners filed the notice of lis pendens although there was no action or pending proceeding that concerned title to the property. This fact negates their probable cause argument. The essential elements of abuse of process are ulterior purpose and willful act in the use of the process not proper in the regular prosecution of the proceeding. Eicke v. Eicke, 517 So.2d 1067 (La.App. 3 Cir.1987). We do not find that the trial court's finding of willfulness or malice was manifestly erroneous.
The trial court erred, however, when it awarded damages of $2,500 for delay and then awarded additional damages to Mascaro for loss of interest and investment opportunities. The award of interest and loss of opportunity obviously encompasses any award for "general delay", and we amend the judgment to eliminate double compensation. And as to the award of interest and investment opportunity, while the record supports an award of damages for those items, we nevertheless conclude that the trial judge erred in his computation of the amount of damages. A review of the trial testimony and documentary evidence offered by the partnership's CPA, Ronald L. Rodriguez, indicates that the figure $76,624, plus interest from date of judicial demand, correctly reflects the amount of loss to Mascaro, but Drs. Palmisano and LaNasa are liable in solido only for 2/5's of that amount because of the five limited partners who wrongfully filed the lis pendens, Mascaro released three of them, leaving Palmisano and LaNasa liable only for their 1/5 each.
We also believe the trial court erred when it awarded to Mascaro compensation for services rendered as a general partner. *642 The trial court gave $45,000 to Mascaro in quantum meruit damages after finding that the general partner rendered nine years of additional services of $5,000 per year for the nine year period between the filing of the notice of lis pendens in 1979 until the time of trial in 1983. This was error because nothing in the partnership agreement provides for compensation of the general partner. As a matter of fact paragraph 14(a) of the partnership agreement states that the General Partner:
agrees to render personal services to the partnership, devoting thereto such time as in his discretion he may deem necessary, it being agreed, however, that the General Partner may engage in other business ventures for his own account. (Ex. P-5 and M-11)
This is impliedly in return for the limited partners' contributions and appointment of the general partner as their managing agent. Thus, nothing in the partnership agreement allows Mascaro additional compensation other than partnership profits, and the partnership agreement aligns the interests of the General Partner with those of the Limited Partners. In other words, the general partner profits when the partnership profits, insuring that in most instances, the General Partner will act in the best interest of the partnership and create the highest possible profits, ensuring himself a formidable management fee.
Mascaro argues that quantum meruit lies outside contractual agreements, meaning that quantum meruit requires compensation even if there is nothing in the partnership agreement that compels it. We disagree. C.C. Art. 2294 provides that a quantum meruit recovery can only be obtained in the absence of an agreement. We interpret this to mean that when there exists a contract of partnership which purposely omits compensation, quantum meruit cannot supply a ground for granting it. The partnership agreement makes it abundantly clear that Mascaro obligated himself to perform services on behalf of the partnership in return for the profit to be received from the partnership venture only. Therefore, we reverse the trial court's award of $45,000 as quantum meruit for services Mascaro may have rendered.
We also believe the trial court erred by awarding Mascaro attorney's fees of $45,000. Attorney's fees are not recoverable except where authorized by statute or contract. General Motors Acceptance Corporation v. Meyers, 385 So.2d 245 (La. 1980). Although Mascaro argues that attorney's fees are "damages" in a case such as this, there is no statutory or contractual basis for recovery of attorneys fees. See also Dane, supra.
We next consider the main demand, and the trial court's finding that Mascaro did not breach a fiduciary duty. Ordinarily, appellate courts defer to the findings of fact of a trial court unless they are manifestly erroneous. But when the trial court errs by excluding admissible, relevant and very persuasive evidence, the manifest error standard should not be applicable. Nonetheless, even if it is applicable, for the following reasons we find the trial court committed manifest error in its finding that Mascaro did not breach his fiduciary duty. There are four separate instances that convince us that he did. Although, as we explained above, Mascaro stood to benefit as the partnership benefited, in each instance Mascaro's personal interest outweighed the benefit that he would have received by acting for the partnership.
First, Mascaro breached his duty to fully inform the limited partners of significant events. Mascaro did not inform the limited partners that he listed the partnership property with Rabca. He had a duty to inform the limited partners of this. Mascaro did not inform the limited partners that he had agreed to sell a significant part of the only partnership asset to his brother-in-law, Frischhertz, and he certainly had an obligation to inform the limited partners of this. When the limited partners sought to buy their proportionate share, he did not tell them that he had agreed to sell a portion to Frischhertz.
Second, Mascaro did not conduct "arm's length" negotiations when selling a portion of the partnership property to *643 Frischhertz. On the question of whether the sale was conducted at arms length for a fair price or for below fair market value the only credible evidence was the testimony of Palmisano and LaNasa's expert, Jim Thorns. We believe the trial court erred when it ignored his testimony.
Thorns was accepted by the trial court as an expert and he gave his opinion as a real estate appraiser. He testified that the fair market value of the parcel of property sold to Frischhertz was $10.00 per square foot rather than the $6.65 paid by Frischhertz. Additionally, he testified that the portion of the property burdened with a servitude which Mascaro gave to Frischhertz, free of charge, was worth approximately $5.00 per square foot. His expert opinion was well supported, but the most crucial factor that convinces us the trial court erred, was the fact that his opinion was corroborated by an actual sale of the remaining portion of the tract by Mascaro to Abercrombie, Mohre, and Scheuermann for $10.15 per square foot, little more than sixty days after the sale to Frischhertz was completed. As further evidence, less than three years after the agreement to sell, but before the sale at $6.65, Mascaro would not accept less than $10.00 per square foot, and he valued the 30' tract subject to the servitude at $3.00. Mascaro offered no testimony to rebut Mr. Thorns' valuations, and we believe the evidence overwhelmingly supports the conclusion that the property was sold at less than fair market value.
A person with a fiduciary duty bears the burden of proof to show that a sale of partnership property was an armslength transaction. Bossier v. Lovell, 410 So.2d 821 (La.App. 3d Cir.1982) Thus, while the sale to an insider related to the general partner does not create a presumption of breach of duty to the partnership, it certainly is evidence that should be considered by the finder of fact. In this case, the sale by Mascaro to his brother-in-law, Frischhertz, at far less that fair market value gave Frischhertz the opportunity for enormous profit, a profit far in excess of what Mascaro would gain through his partnership interest. This we believe was persuasive evidence that Mascaro breached his duty by selling to his brother-in-law at less than fair market. It also breaches the general partner's duty (established in Noe v. Roussel, 310 So.2d 806, 818 (La.1975)) for a fiduciary to maintain arm's length distance during transactions.
We also find a third breach of duty that occurred when Mascaro listed the property for sale with Rabca Real Estate. Putting aside the questionable $25,000 guaranteed commission which eliminated the opposition to rezoning, Mascaro breached his duty by giving Rabca the listing. During trial Palmisano and LaNasa proffered Mascaro's deposition given in the first suit (Palmisano, et al. v. Lake Forest Boulevard Medical Development, # 79-19200 Civil District Court, Parish of Orleans). In that deposition Mascaro stated he gave the listing to Rabca both to eliminate the opposition to rezoning and also because he knew Frank Rabito would not sell the property to another medical group for a medical facility which would compete with a piece of property owned individually by Mascaro across the street from the partnership's property. (See exhibit P. 56-B, pages 42-46).
When the trial court refused to admit this evidence, we believe it erred. The deposition was admissible. At trial any part or all of a deposition may be used against any party who was present or represented at the taking of the deposition for the purpose of contradicting or impeaching the testimony of the deponent as a witness, C.C.P. art. 1450(1), and the deposition of a managing agent may be used by an adverse party for any purpose. Additionally, Article 402 of the Code of Evidence states that all relevant evidence is admissible. Relevant evidence as defined by Article 401 of the Code of Evidence, is that which has a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Certainly, a deposition which points to the self-interest behind a general partner's handling of partnership property is relevant and admissible in an action against *644 the partnership for dissolution and against the general agent for breach of fiduciary duty. Mascaro's deposition was offered to impeach his testimony. It is admissible under C.C.P. art. 1450(1). It was the deposition of a managing agent. It was admissible under C.C.P. art. 1450(2). It was taken under oath while Mascaro was represented by his attorney. It is a statement by a party to the lawsuit which is close to an admission against interest, and although not given in the same lawsuit, in this case it does not matter because the parties are the same and the cause of action and issues are identical. We believe that Mascaro's statement shows a breach of fiduciary duty by listing the real estate with a realtor whose interest conflicted with the limited partners.
Mascaro argues that when he acted in his capacity as general partner for the partners then his actions on behalf of the partnership are not subject to question by limited partners. Mascaro relies on the partnership agreement which authorized him to "grant, bargain, sell convey, deliver,... said property in any manner, ... for such amounts and on such terms and conditions,... as said General Partner shall in his sole and uncontrolled discretion, deem necessary, advisable or proper." And in paragraph 14, as amended, the agreement also says that the general partner shall not be liable to limited partners for acts within the scope of his authority unless the acts are misfeasance or malfeasance. However, paragraph 15 requires the general partner to act as a fiduciary, and in all matters as a prudent administrator. To act as a fiduciary Mascaro had to act primarily for the benefit of the partnership, and if he did not then he was not acting within the scope of his authority, and paragraph 14 was inapplicable. Therefore these two provisions are in apparent conflict or at least the agreement is ambiguous. We give force to the more equitable; if Mascaro did not act as a fiduciary with the scrupulous good faith and candor that office requires then he is liable for any damages to the limited partners that are caused by his breach of duty.
Moreover, although the Civil Code says contracts have the effect of law between the contracting parties involved, this does not mean parties may contract to circumvent the basic duties established by other parts of the Civil Code. One of these principles is found in Article 2809, which provides that:
A partner owes a fiduciary duty to the partnership and to his partners. He may not conduct any activity, for himself or on behalf of a third person, that is contrary to his fiduciary duty and is prejudicial to the partnership. If he does so, he must account to the partnership and to his partners for the resulting profits.
Therefore, even if the partnership agreement did not require Mascaro to act as a fiduciary, the Civil Code does, and it would be against public policy to permit a partnership agreement to immunize a general partner from damage claims for breach of a fiduciary relationship.
In a fourth instance of breach of duty, Mascaro failed to pay Drs. Palmisano and LaNasa their respective shares of partnership cash upon sale of the partnership property. Not only did he fail to pay them their share in 1983, but, because in his view they owed him more money than he owed them, he took their money and deposited it in his personal bank account. He argues the civil law doctrine of "compensation" or "confusion" in defense of his actions, claiming that his claim for lis pendens damages extinguished Palmisano's and LaNasa's claims. Pretermitting a discussion of Mascaro's tort of conversion, his "compensation" argument is flawed. C.C. art. 1893 provides:
Compensation takes place by operation of law when two persons owe to each other sums of money or quantities of fungible things identical in kind, and these sums and quantities are liquidated and presently due ... (emphasis added).
At the time Mascaro chose to keep Drs. Palmisano's and LaNasa's percentage of partnership profits, his tort action for wrongful filing of the notice of lis pendens had not been reduced to judgment. It was, *645 therefore, an unliquidated claim. In order for compensation or set off to occur, the two debts must exist simultaneously and have as their object the payment of a "sum of money or a certain quantity of consumable things of one and the same kind and the debts must be equally liquidated and demandable." La.C.C. art. 2209; CDT, Inc. v. Greener & Sumner Architects, 453 So.2d 1252 (La.App. 3 Cir.1984).
This brings us to Palmisano and LaNasa's final assignment of error, the trial court's failure to award them interest on their partnership proceeds from June 9, 1983, the date of partnership dissolution.
C.C. art. 2000 provides:
When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement at the rate of legal interest fixed by Article 2924. The obligee may recover these damages without having to prove any loss, and whatever loss he may have suffered he can recover no more. La.Civ.Code art. 2000.
The partnership dissolved on June 9, 1983, with the sale of the last portion of its only asset. The partnership agreement called for distribution to the partners after an accounting. The June 9, 1983 accounting indicated that Palmisano and LaNasa were each owed $65,635.00. The trial court erred in failing to award appellants interest on these amounts. Therefore, we render judgment awarding Palmisano and LaNasa interest from June 9, 1983, until payment, on their partnership sums in accordance with the provisions of C.C. art. 2924. We believe Palmisano and LaNasa are entitled to interest on their partnership funds from the date the distribution was to be made, according to the articles of partnership. La.C.C. art. 2000 is applicable here.
In sum, we award Mascaro damages of $30,650.00, plus interest from date of judicial demand, for loss of interest and investment opportunity he would have earned had the lis pendens not been filed. We reverse the trial court award of quantum meruit compensation for Mascaro's efforts on behalf of the partnership, and we reverse the award of attorney's fees to Mascaro. We affirm the trial court award to Palmisano and LaNasa of $65,635 each; we amend to award legal interest from the date of distribution, June 9, 1983, until paid. We reverse the trial court's finding of facts, and we hold that Mascaro breached his fiduciary duty. We find Palmisano and LaNasa proved damages by the less than arm's length sale to Frischhertz, and we award damages in the amount of $16,909.00 each, their 5% partnership share of the difference between the $6.65 sale price to Mr. Frischhertz and the $10.00 market value. In addition, both Palmisano and LaNasa are each awarded $1,988.55 for their 5% partnership share of the property worth $5.00 per square foot which was given free of charge to Frischhertz. Palmisano and LaNasa are entitled to interest from the date of judicial demand to the present for the damages for breach of fiduciary duty. We arrive at these figures using the undisputed values testified to by real estate appraiser, Jim Thorns.
Cost of trial and appeal are to be paid one-half by appellants and one-half by appellees.
Each party is to bear its own costs of the appeal.
AFFIRMED IN PART; REVERSED IN PART; RENDERED AND REMANDED.