517 So.2d 1067 (1987)
Elizabeth Larue EICKE, Plaintiff-Appellant,
v.
Johonnas Justus EICKE, Defendant-Appellee.
No. 86-890.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1987.
*1068 Sanders & Castete, Martin S. Sanders, Jr., Winnfield, for plaintiff-appellant.
Nelson, Hammons & Johnson, John L. Hammons, Shreveport, for defendant-appellee.
Before STOKER and YELVERTON, JJ., and CULPEPPER, J. Pro Tem.[*]
WILLIAM A. CULPEPPER, Judge. Pro Tem.
This appeal involves the rights of grandparents to visit their grandchildren who have been adopted by their stepfather, where the natural father of the children is alive but is divorced from the natural mother.
Elizabeth Larue Eicke Hyde and her husband, Stephen Alan Hyde (hereinafter the Hydes) filed a rule to terminate previously court-ordered visitation privileges granted to their children's natural paternal grandparents, J. Seabourn Eicke and Lavelle Justus Eicke (hereinafter the Eickes). The Eickes reconvened, seeking to increase their visitation privileges, damages for the Hydes' allegedly contemptuous conduct, and reasonable attorney's fees and costs. After a hearing, the trial court rendered judgment dismissing the Hydes' rule to terminate visitation rights, holding the Hydes in contempt of court, awarding the Eickes $3,500.00 in damages, increasing the Eickes' visitation privileges, and assessing all costs against Elizabeth Hyde. The Hydes appealed. We affirm.

FACTS
Johonnas Justus Eicke and Elizabeth Larue were married in Alaska on January 3, 1974. Two children, Sunnydale J. Eicke, born March 23, 1976, and Christopher Allen *1069 Eicke, born July 22, 1978, were produced from this marriage. The couple separated in 1979, and Elizabeth Eicke moved to Louisiana where she obtained a separation and was awarded custody of the children. Johonnas Eicke was granted a divorce and custody of the children by a Texas court on June 18, 1980.
On July 17, 1980, Johonnas Eicke filed a petition to make the Texas judgment executory. Following an appeal to the United States Supreme Court, the Louisiana decree was finalized and Elizabeth Eicke was awarded permanent custody of the children.
By judgment rendered on December 17, 1980, Johonnas Eicke was granted specified visitation privileges and was ordered to pay child support in the amount of $150.00 per month. He exercised his visitation privileges on three or four occasions prior to March, 1981. He ceased making child support payments in 1980.
At the end of February, 1981, Johonnas Eicke took the children to Texas and refused to return them to Louisiana on the appointed date. Elizabeth Eicke regained possession of the children on or about March 17, 1981. Johonnas Eicke ceased to have contact with the children subsequent to the incident.
On October 24, 1983, the parents of Johonnas Eicke, J. Seabourn Eicke and Lavelle Justice Eicke, intervened requesting visitation privileges as the paternal grandparents of the minor children. The Eickes alleged that Elizabeth Eicke had arbitrarily refused to allow them to visit with their grandchildren on several occasions. At the hearing on November 30, 1983, the Eickes testified that they were allowed to see the children only four times since March, 1981. The trial judge granted the Eickes visitation privileges on the condition that they would not take the children out of the parish in which their mother resided without her written permission.
On March 1, 1984, the Eickes filed another intervention praying for increased visitation privileges. Following a hearing on June 27, 1984, the trial judge increased the Eickes' visitation rights and permitted them to transport the children to Texas. The court specifically allowed the Eickes to visit with the children during the summer and at Christmas.
To accommodate Elizabeth Eicke's schedule, the Eickes agreed to delay their summer visitation period with the children. During the altered visitation period, the Eickes were required to attend a business meeting in Kansas City, Missouri. The Eickes testified that they had informed Elizabeth Hyde of this trip prior to the visitation period, but she denied having any knowledge of it. While the Eickes were in Kansas City, the children remained with Johonnas Eicke overnight. The children informed Elizabeth Eicke that they had stayed overnight with their father on the day that they returned from visitation. Elizabeth Eicke testified that she was aware that the Eickes had allowed Johonnas Eicke to visit with the children each time that the children visited in Texas.
Elizabeth Eicke married Stephen Alan Hyde on November 10, 1983. Stephen Hyde completed an adoption of the children on August 27, 1984.
On December 19, 1985, Elizabeth Hyde and Stephen Alan Hyde, as intervenor, filed a rule to terminate the grandparents' visitation privileges. The trial judge ordered that all visitation privileges be suspended until the hearing was held.
The Eickes were not notified of these proceedings until Mr. Eicke called the Hydes on Christmas Eve and was told by Stephen Hyde that the grandparents' visitation rights had been terminated. Because the Eickes had not yet been served with process, Mr. Eicke flew to Louisiana to pick up the children as previously scheduled. When Mr. Eicke arrived at the home of the children's maternal grandfather, where the children were staying, Elizabeth Hyde's father informed him that the Hydes had left orders that the Eickes could not take the children.
On January 16, 1986, the Eickes answered the Hydes' petition and filed a reconventional demand, praying for increased visitation privileges, damages for the Hydes' *1070 alleged contemptuous conduct, and attorney's fees and costs. After a hearing on January 20, 1986, the trial judge rendered judgment against the Hydes and in favor of the Eickes, dismissing the Hydes' rule to terminate visitation privileges, holding the Hydes in contempt of court, awarding $3,550.00 in damages to the Eickes, increasing the Eickes' visitation privileges, and assessing all costs against Elizabeth Hyde. On April 8, 1986, the Hydes were each given a suspended sentence of 30 days imprisonment on the contempt charge.
The Hydes appeal alleging that the trial court erred:
(1) In finding that the Eickes continued to enjoy a legal right to court-ordered visitation after their grandchildren had been adopted; and
(2) In finding that the Hydes' filing of the petition for rule to terminate visitation privileges constituted an abuse of process and entitled the Eickes to damages.

ASSIGNMENT OF ERROR NUMBER ONE
By their first assignment, the Hydes contend that LSA-R.S. 9:572(B), which was the basis of the Eickes' claim to entitlement to grandparents' visitation privileges, is not applicable to the factual situation presented in this case. At the time of trial, LSA-R.S. 9:572(B) provided:
"Notwithstanding any provision of law to the contrary contained in Article 214 of the Louisiana Civil Code, in the event of an adoption, the natural parents of a deceased party to a marriage dissolved by death may have limited visitation rights to the minor child or children of the marriage dissolved by death, provided the natural parents of a deceased party prove that they have been unreasonably denied visitation rights and such limited visitation rights would be in the best interests of the minor child or children; and provided further that the adoption takes place after the parent whose parents are seeking visitation rights is deceased. The court shall consider all relevant factors in reaching a conclusion, including without limitation psychological evaluation, and it may order an investigation by the Department of Health and Human Resources." (Emphasis added.)
LSA-R.S. 9:572(B) is an exception to LSA-C.C. Art. 214, which provides in pertinent part:
"If the adoptive parent is married to a blood parent of the adopted person, the relationship of that blood parent and his blood relatives to the adopted person shall remain unaltered and unaffected by the adoption. Otherwise, upon adoption: the blood parent or parents and all other blood relatives of the adopted person, except as provided by R.S. 9:572(B), are relieved of all of their legal duties and divested of all of their legal rights with regard to the adopted person, including the right of inheritance from the adopted person and his lawful descendants; and the adopted person and his lawful descendants are relieved of all of their legal duties and divested of all of their legal rights with regard to the blood parent or parents and other blood relatives, except the right of inheritance from them."
The Hydes assert that because the marriage between Johonnas Eicke and Elizabeth Hyde was dissolved by divorce rather than by death, the provision which allows grandparents to have visitation rights with their grandchildren after adoption is inapplicable. In opposition to this claim, the Eickes cite Dripps v. Dripps, 366 So.2d 544 (La.1978). In Dripps, the natural mother of the children remarried after the death of the children's father. The paternal grandparents subsequently obtained specified visitation privileges by court order. Thereafter, the mother's new husband adopted the children, and the mother and the adoptive father filed suit to terminate the visitation privileges of the paternal grandparents.
The parents relied on LSA-C.C. Art. 214 as it existed at the time of the 1977 suit, which was prior to the incorporation of the 9:572(B) exception. In 1978, the trial judge rendered judgment in favor of the grandparents, *1071 and while the case was pending on appeal he filed written reasons in which he declared that Article 214 was unconstitutional as applied to the case.
In the legislative session then in progress, Article 214 was amended by Act 458 of 1978, effective September 8, 1978, to add the R.S. 9:572(B) exception. The grandparents asserted that the amendments were retroactively applicable to cases on appeal as curative legislation.
The Supreme Court held that the amendments were applicable to the case even though the legislation was not enacted until after the appeal was taken.
In his written reasons for judgment, submitted on March 24, 1986, the trial judge declared that the provisions of C.C. Article 214 as applied to this case are unconstitutional. The Hydes filed an appeal on May 9, 1986. During the 1986 regular session of the legislature, LSA-R.S. 9:572(B) was amended and a sentence was inserted which provides:
"In addition, the parents of a party who has forfeited the right to object to the adoption of his child, pursuant to the provisions of R.S. 9:422.1, may have limited visitation rights to the minor child or children so adopted, provided the parents of the forfeiting party prove that they have been unreasonably denied visitation rights and such limited visitation rights would be in the best interests of such minor child or children ..."
The 1986 amendment to R.S. 9:572(B), if applicable to this case, would entitle the paternal grandparents to limited visitation rights, provided the grandparents were able to establish the prerequisites set forth in R.S. 9:572(B). In the final decree of adoption rendered on August 27, 1984, the court found that Johonnas Eicke had forfeited his right to contest the adoption of his children under the provisions of R.S. 9:422.1 by failing to pay child support as ordered by the court for a period in excess of three years, and by failing to visit, communicate, or attempt to communicate with the children without just cause for a period in excess of two years. At the hearings on the rules for child visitation, the court determined that the Eickes were unreasonably denied visitation rights by Elizabeth Hyde and that limited visitation privileges would be in the best interests of the children. Thus, all of the requirements of R.S. 9:572(B) as amended have been satisfied.
The remaining issue is whether or not the amendments to R.S. 9:572(B) can be retroactively applied to this case. In Dripps, supra at page 548, which presented the same issue for determination, the court held that such amendments could be applied retrospectively, reasoning as follows:
"Although well-established, the principle of non-retroactivity is subject to exceptions.
Some changes in the law are applicable to all situations, past, present and future. Laws which determine jurisdiction and procedure are applicable, from the date of their promulgation, to all law suits, even to those which bear upon facts and acts of a prior date. They even apply to pending law suits as the decisions already cited demonstrate. These laws are remedial in character concerned with procedure, not substantive rights. They do not impair the obligations of contracts. Planiol, Vol. 1, No. 258.
Another example is interpretive laws which determine the meaning of existing laws. In a sense they explain and interpret existing laws or add to them provisions which the lawmaker believes to be salutary. In such a case it is not the interpretive law but the original which applies. These laws are curative in character, and the line between this intention of the lawmaker and the enactment of new provisions is tenuous and may result in eroding the principle of non-retroactivity. Planiol, Vol. 1, No. 251.
When the intervention of a court is necessary to bring about a juridical solution (for instance a decree revoking visitation rights as in this case) there will be no retroactivity and the court will apply the law in force at the time the judgment is pronounced. The visitation rights at issue here have not been exercised completely; there is an expectation that they will be exercised in the future during the duration of the law as amended by Act 458 of 1978. Exercise of these rights in *1072 the future, therefore, are properly the province of the legislature to regulate. What has transpired in the past in this regard is not affected.
Our decisions have embodied these principles and we find them applicable to the problem before us."
In light of the curative amendments to R.S. 9:572(B) and the reasoning of Dripps, we find that the Eickes were entitled to continue to enjoy their visitation privileges subsequent to the adoption of their grandchildren.

ASSIGNMENT OF ERROR NUMBER TWO
In their second assignment, the Hydes contend that their filing a petition to terminate grandparental visitation privileges was not sufficient to constitute an abuse of process and therefore the Eickes were not entitled to damages.
A cause of action for abuse of process exists in Louisiana. Citizens, Electors & Taxpayers v. Layrisson, 449 So.2d 613 (La.App. 1 Cir.1984), writ den., 452 So.2d 170 (La.1984); Mini-Togs, Inc. v. Young, 354 So.2d 1389 (La.App. 2 Cir. 1978); Succession of Cutrer v. Curtis, 341 So.2d 1209 (La.App. 1 Cir.1977), writ den., 343 So.2d 201 (La.1977). The essential elements of the tort consist of: (1) an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding. Citizens, supra; Mini-Togs, Inc., supra; Cutrer, supra.
In his written reasons for judgment, the trial judge specifically found that the Hydes improperly misled the trial court into issuing an ex parte order through the use of verified pleadings which were not supported by the evidence.
The basis of Elizabeth Hyde's complaint was that the Eickes had allowed the children to spend the night with their biological father, who had abducted them in the past, during the grandparents' visitation period. The evidence produced at trial reflected that Elizabeth Hyde was aware that Johonnas Eicke had been spending time with the children during their Texas visits with the Eickes. Elizabeth Hyde testified that she learned that the children had stayed overnight with Johonnas Eicke on the day that they returned from their July visitation period.
Although the Hydes acquired knowledge of the incident during the summer of 1985, they waited until the week before the Eickes' scheduled Christmas visitation period to have the ex parte order issued. Elizabeth Hyde had a conversation with Lavelle Eicke as late as November, 1985 regarding the arrangement of the Eickes' Christmas visitation period with the children. At no time prior to the filing of the rule did Elizabeth Hyde inform the Eickes that they would not be allowed to have the children at Christmas. At trial, Elizabeth Hyde admitted that the filing was specifically instituted prior to Christmas to prohibit the Eickes from exercising their court-ordered visitation privileges.
The trial judge found that Elizabeth Hyde's timing in filing the suit "was obviously designed to obstruct visitation at Christmas, not to seek a resolution of the issue." We believe that the evidence fully supports this finding, and that the Eickes have successfully proven an abuse of process entitling them to damages.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed against appellants.
AFFIRMED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.