# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 17-1014 consolidated with 18-186


MATTHEW M. WALKER

VERSUS

THE MANITOWOC COMPANY, INC., ET. AL.

### CONSOLIDATED WITH

JIM LEE HANKINS

VERSUS

THE MANITOWOC COMPANY, INC., ET AL.


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 11-9533 C/W 12-0052
HONORABLE LORI ANN LANDRY, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

### ULYSSES GENE THIBODEAUX
### CHIEF JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Phyllis M. Keaty, and Candyce G. Perret, Judges.

**AFFIRMED.**


**Franklin Glen Shaw**
**Leger & Shaw**
**512 East Boston Street**
**Covington, LA 70433**
**Telephone: (985) 809-6625**
**COUNSEL FOR:**
    **Plaintiffs/Appellants - Jim Lee Hankins and Matthew M. Walker**

**Michael L. Barras**
**Oats & Marino**
**100 East Vermilion Street - #400**
**Lafayette, LA 70501**
**Telephone: (337) 233-1100**
**COUNSEL FOR:**
    **Plaintiffs/Appellants - Jim Lee Hankins and Matthew M. Walker**

**Edward Paul Landry**
**Landry, Watkins, Repaske & Breaux**
**211 East Main Street**
**New Iberia, LA 70560**
**Telephone: (337) 364-7626**
**COUNSEL FOR:**
    **Defendant/Appellee - Manitowoc Cranes, LLC**

**J. Frederick Kessenich**
**Daigle Fisse & Kessenich PLC**
**227 Highway 21**
**Madisonville, LA 70447**
**Telephone: (985) 871-0800**
**COUNSEL FOR:**
    **Defendant/Appellee - Starr Indemnity and Liability Insurance Company**

**John Ashley Moore**
**Taylor, Porter, Brooks & Phillips L.L.P.**
**P. O. Box 2471**
**Baton Rouge, LA 70821-2471**
**Telephone: (225) 387-3221**
**COUNSEL FOR:**
    **Defendants/Appellees - Travelers Property and Casualty Company of America and H&E Equipment Services, Inc.**

**William H. Parker, III**
**John Hatch Hughes**
**Allen & Gooch**
**P. O. Box 81129**
**Lafayette, LA 70598**
**Telephone: (337) 291-1390**
**COUNSEL FOR:**
    **Intervenor/Appellant - Bayou Welding Works, LLC**

**Michael Thomas Pulaski**
**Keith W. McDaniel**
**McCranie, Sistrunk, Anzelmo, Hardy, McDaniel & Welch, LLC**
**195 Greenbriar Boulevard – Suite 200**
**Covington, LA 70433**
**Telephone: (504) 831-0946**
**COUNSEL FOR:**
     **Defendants/Appellees - Manitowoc Cranes, LLC, Westchester Fire Insurance Co., and The Manitowoc Company, Inc.**

**Douglas William Truxillo**
**Onebane Law Firm**
**P. O. Drawer 3507**
**Lafayette, LA 70502-3507**
**Telephone: (337) 237-2660**
**COUNSEL FOR:**
     **Defendant/Appellee - T & T Truck & Crane Service, Inc.**

**Steven Bernard Rabalais**
**Rabalais & Hebert**
**701 Robley Drive - #210**
**Lafayette, LA 70503**
**Telephone: (337) 981-0309**
**COUNSEL FOR:**
     **Defendant/Appellee - Mike Evans Crane Service LLC**

**Dan Boudreaux**
**9100 Bluebonnet Centre Boulevard - Suite 300**
**Baton Rouge, LA 70809**
**Telephone: (225) 293-7272**
**COUNSEL FOR:**
     **Intervenor/Appellee - Liberty Mutual Insurance Company**

**Carl William Robicheaux**
**2014 West Pinhook Road – Suite #503**
**Lafayette, LA 70508**
**Telephone: (337) 235-7888**
**COUNSEL FOR:**
     **Defendant/Appellee - Northern Crane Service Inc.**

**Paul J. Politz**
**Taylor, Wellons, Politz & Duhe**
**1515 Poydras Street – Suite 1900**
**New Orleans, LA 70112**
**Telephone: (504) 525-9888**
**COUNSEL FOR:**
     **Defendant/Appellee - Leslie Charles Bordelon**

**Jake P. Skaggs**
**Cozen & O'Connor**
**1221 McKinney – Suite 2900**
**Houston, TX 77010**
**Telephone: (832) 214-3900**
**COUNSEL FOR:**

    **Intervenors/Appellants - Allianz Global Corporate and Specialty Company, Bordelon Equip Co., and Leslie Charles Bordelon**

**Stanwood R. Duval, Jr.**
**In Proper Person**
**101 Wilson Avenue**
**Houma, LA 70364**
    **Defendant/Appellee**

**THIBODEAUX, Chief Judge.**

Plaintiffs, Matthew M. Walker and Jim Lee Hankins, filed separate suits, seeking damages for personal injuries they sustained as a result of a worksite accident involving the alleged failure of a Manitowoc model 888 crane (crane) to hold the load upon which Plaintiffs stood, causing Plaintiffs to drop to the ground. Through multiple amended petitions, Plaintiffs sued the manufacturer of the crane, the Manitowoc Company, Inc., Manitowoc Cranes, LLC, and their insurer, Westchester Fire Insurance Company (collectively Manitowoc), alleging the crane was unreasonably dangerous because of an inadequate warning and/or defect in design or construction/composition as defined by the Louisiana Products Liability Act (LPLA). Plaintiffs also sued H&E Equipment Services, Inc., and its insurer, Travelers Property and Casualty Company of America (collectively H&E), among other various owners, custodians, servicers, and inspectors of the crane, alleging that H&E failed to properly service or inspect the crane and that H&E either knew or should have known of the defect in the crane and failed to exercise reasonable care in preventing the accident. Plaintiffs' employer, Bayou Welding Works, LLC (BWW), and its insurer, Allianz Global Corporate and Specialty Company (Allianz) (collectively Intervenors), intervened in the suit, seeking property damages and consequential losses arising from the same accident.[1] After the suits were consolidated, H&E moved for summary judgment, which the trial court granted.

---

[1]Liberty Mutual Insurance Corporation (Liberty), the workers' compensation carrier for Plaintiffs' employer, intervened in the lawsuits as well, adopting the allegations set forth by Plaintiffs pursuant to the Louisiana Workers' Compensation Act. Liberty adopts Plaintiffs' position in brief to this court.

Plaintiffs/Intervenors filed this "protective appeal" to reverse the trial court's judgment granting H&E's motion for summary judgment, but only if this court reverses the partial summary judgment granted to Plaintiffs/Intervenors on their failure to warn claim against Manitowoc in the companion case, *Matthew M. Walker v. The Manitowoc Company, Inc., et al.*, consolidated with *Jim Lee Hankins v. The Manitowoc Company, Inc., et al.*, 16-897, 16-898, 18-221, 18-223 (La.App. 3 Cir.), __ So.3d __ (companion case). After reviewing the record evidence, we affirm the trial court's grant of summary judgment in favor of H&E.

I.

**ISSUES**

On appeal, Plaintiffs/Intervenors ask this court to consider whether:

the trial court erred in granting summary judgment to H&E and Travelers in the event this court distinguishes, finds inapplicable, or otherwise overrules *Marks* [*v. OHMEDA, Inc.*, 03-1446 (La.App. 3 Cir. 3/31/04), 871 So.2d 1148, *writs denied*, 04-1617, 04-1653 (La. 10/8/04), 883 So.2d 1019, 1020].

II.

**FACTS AND PROCEDURAL HISTORY**

As discussed more fully in the companion case, on May 26, 2011, Plaintiffs, who were employed as riggers for BWW, sustained injuries when the crane at issue allegedly malfunctioned and dropped the boom upon which they stood, causing Plaintiffs to fall to the ground. At the time of the accident, BWW was leasing the crane from the Bayou Companies, which had purchased the crane in 2008 from a previous owner. BWW also sustained property damage, and Allianz, which provided builders' risk insurance coverage for BWW, paid for BWW's damage.

Plaintiffs each filed separate product liability lawsuits against Manitowoc, alleging that the accident was caused by a defect in the crane's brake/clutch assembly. Specifically, they referred to six bearing retainer cap screws that secured the brake and clutch assembly to the crane's hoist drum. Plaintiffs/Intervenors alleged that the cap screws had loosened, causing the drum to disengage from the crane shaft and fall, a defect of which Manitowoc had advised its distributors in 2002 through the issuance of its Service Bulletin 90.

Plaintiffs/Intervenors also named as defendants various owners, servicers, and inspectors of the crane, including H&E. Plaintiffs alleged that H&E failed to properly service the crane and that H&E, a Manitowoc distributor, knew or should have known of the manufacturing defect in the crane and failed to warn or advise the Bayou Companies, the owner of the crane, of such defects prior to the accident. BWW and Allianz intervened in the lawsuits, and the trial court subsequently consolidated the two suits.

H&E twice moved for summary judgment, arguing that H&E had no duty to warn of manufacturing defects under the LPLA and that its one-time, limited service call on the crane prior to the collapse did not create a duty owed to Plaintiffs or Intervenors to investigate or warn of the alleged defect. Although it denied the initial motion as premature, the trial court subsequently granted H&E's second motion for summary judgment finding that, based on the undisputed facts and evidence, H&E did not breach a legal duty in this instance. In so holding, the trial court relied, in part, upon this court's holding in *Marks* that the duty to warn of manufacturing defects found in the LPLA cannot be delegated by the manufacturer, Manitowoc. The trial court reasoned:

3

> For the reasons I will talk about later [in granting partial summary judgment to Plaintiffs/Intervenors on Manitowoc's duty to warn of manufacturing defects], I do think this is a duty that was -- is [owed] by Manitowoc. I don't think they can delegate that duty to the distributor. However, [H&E] was not the distributor of [the crane]. Th[e] distributor[, Coast Crane Company,] was the distributor where the crane was found in 2002 when they had a load [] drop which . . . resulted in Service Bulletin 90. The repair that this H & E did [on this crane] was 15 some odd months before the incident, totally unrelated. Mr. Bordelon [of the Bayou Companies] and his people have -- that A through Z, did not request [H&E] to do anything with things that were the subject of Service Bulletin 90. I think it is clear [from] the reasons stated by H & E in their memorandum in support thereof that they're out at this point. Evidence is sufficient to say that as a matter of law they are entitled to summary judgment having not owing a duty to Bayou at that particular time.

Plaintiffs/Intervenors have now filed this appeal "protectively," asking this court to reverse the trial court's judgment sustaining H&E's motion for summary judgment, but only if this court reverses the trial court's judgment sustaining Plaintiffs'/Intervenors' motion for partial summary judgment on Manitowoc's duty to warn. Having found genuine issues of material fact exist on the record as to whether Manitowoc breached its duty to warn of post-manufacturing defects under the LPLA, we reversed the partial summary judgment granted in favor of Plaintiffs/Intervenors in the companion case. Therefore, we will now entertain Plaintiffs'/Intervenors' appeal in this matter.

III.

## STANDARD OF REVIEW

An appellate court reviews a motion for summary judgment de novo, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d

4

880. Therefore, just like the trial court, we are tasked with determining whether "the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

As has been long established on summary judgment:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

La.Code Civ.P. art. 966(D)(1).

A genuine issue of material fact exists "if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue." *Smith v. Our Lady of the Lake Hosp., Inc.,* 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751 (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 481 (1983)). In determining whether a material factual dispute exists, a court should consider all of the record evidence but must refrain from determining the merits, making credibility determinations, and evaluating testimony. *Id.* All doubts are resolved in favor of the non-moving party. *Id.*

# IV.

## LAW AND DISCUSSION

Under Louisiana's duty-risk analysis, which courts employ to determine liability under our general negligence scheme, a plaintiff must prove five elements:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).

*Lemann v. Essen Lane Daiquiris, Inc.*, 05-1095, p. 7 (La. 3/10/06), 923 So.2d 627, 633. Given its burden of proof under La.Code Civ.P. art. 966(D)(1), a defendant is entitled to summary judgment if there is no factual support on the record to support even just one of these five elements.

In its motion for summary judgment, H&E points out that its lone connection to this case was a single, unrelated electrical repair on the crane conducted on February 22, 2010, approximately fifteen months before the accident. At that time, an H&E technician diagnosed a power connection problem with the crane's computer and installed a new CPU board to remedy the electrical failure in the crane's cab. It is undisputed that this repair had nothing to do with the alleged brake/clutch assembly malfunction that Plaintiffs/Intervenors allege caused the accident at issue. As no fact or expert witness has testified or opined that H&E's lone, electrical repair, over a year before the crane collapsed, had any causal connection with the accident, H&E asserts that the Plaintiffs/Intervenors could not prove their allegations against H&E based on its failure to exercise reasonable care

in conducting this lone repair. After reviewing the record, we agree and find no error in the trial court's judgment granting summary judgment as to Plaintiffs'/Intervenors' allegations of negligence relating to this lone repair.

At issue in the allegations that H&E knew or should have known of a manufacturing defect in the crane and failed to warn or advise the Bayou Companies of such defects prior to the accident is the potential defect that Manitowoc documented in Service Bulletin 90. As explained in the companion case, Manitowoc investigated another model 888 crane located in Colorado that suffered a similar malfunction, an unintended load drop, on July 25, 2012. In its investigation, Manitowoc learned that the cap screws could potentially loosen and cause damage to the clutch assembly which could, in turn, result in load drops when the crane was operating in freefall mode. Thereafter, Michael Brunet, Manitowoc's former Director of Product Safety, immediately drafted Service Bulletin 90 to warn its distributors. As Mr. Brunet explained, service bulletins were the method that Manitowoc used to communicate service issues involving its cranes.

Service Bulletin 90 provided that loose cap screws could cause damage to the clutch assembly and requested that all model 888 cranes equipped with freefall be inspected by a Manitowoc-qualified service technician. If any crane was found to have loose cap screws, the screws should have been removed, applied with Loctite 242, and re-tightened to fifty-three foot-pounds. Attached to the bulletin was an inspection form that was to be completed by the distributor and returned to Manitowoc within thirty days from the date the bulletin was issued.

At the time that Service Bulletin 90 was issued, Manitowoc identified forty-two cranes that were manufactured with freefall installed by Manitowoc. Manitowoc sent Service Bulletin 90 to its distributors via facsimile in October 2002.

Thereafter, Manitowoc relied upon its distributors to identify the model 888 cranes that they had sold and to contact the owners of those cranes to both warn the owners and to inspect and, if need be, perform the recommended repairs.

It is undisputed that the crane at issue was subject to Service Bulletin 90 and that H&E, a Manitowoc distributor, knew of the defect, having received Service Bulletin 90. What is disputed in this matter is whether H&E owed a duty to the Bayou Companies, and in turn Plaintiffs/Intervenors, to warn of the potential defect. In granting summary judgment in H&E's favor, the trial court relied upon this court's holding in *Marks v. OHMEDA, Inc.*, 871 So.2d at 1155, that "the duty established by La.R.S. 9:2800.57(C) is a duty placed directly upon the manufacturer. It cannot be delegated." Therefore, the trial court found that H&E owed no duty to Plaintiffs/Intervenors to warn of the defect.

However, in the companion case, we distinguished *Marks* on several grounds: (1) the trial court in *Marks* reached its factual conclusion on the insufficiency of the warning following a six-day bench trial, whereas the companion case was before the court on summary judgment and (2) the *Marks* manufacturer merely published its warning in a medical journal having taken no direct action to notify its users, whereas Manitowoc issued its warning to its distributors, relying, as was its historical practice, on its distributors to then inform their buyers/owners as well as to inspect and repair any potential defect. Having found genuine issues of material fact exist as to whether Manitowoc's warning procedure was reasonable in these circumstances under the LPLA, we reversed summary judgment as to this issue.

In this appeal, Plaintiffs/Intervenors argue that, because H&E had actual notice from Manitowoc that a critical part of the crane was defective and it

8

serviced the crane after it was transported to south Louisiana, H&E, as a distributor, owed a heightened duty to ensure that the defective cap screws had been fixed. Under their theory, H&E had a heightened duty to: (1) inspect the cap screws as detailed in Service Bulletin 90; (2) ensure that the defective cap screws had been corrected; and (3) advise its customer (the Bayou Companies) of the existence of Service Bulletin 90 and the need to have the cap screws inspected. As H&E indisputably failed to perform any of these tasks, Plaintiffs/Intervenors assert that H&E breached its duty and is solidarily liable for the damages that arose from its breach.

Plaintiffs/Intervenors also argue that it is not significant that H&E was not the original distributor of the crane or that the crane was not located in H&E's distributorship area at the time Service Bulletin 90 was issued. Rather, they contend that once H&E received notice that the crane was in its territory, it assumed the obligation as the licensed dealer to ensure that all the warranty work and service bulletin inspections were performed.

H&E, however, contends that it had no legal or contractual duty to warn of any alleged defect in the crane. Besides its single, limited interaction with the crane, H&E notes that it is undisputed that no one from the Bayou Companies ever complained to H&E of problems with the freefall mechanism. And according to Mr. Brunet, Service Bulletin 90, issued some eight years prior to H&E's first interaction with the crane, would not have been within the scope of the H&E's technician's repairs unless the Bayou Companies or someone affiliated with the crane would have complained of problems with the freefall mechanism. It is also not disputed that H&E was never asked and never performed any service or repair on the clutch assembly at issue.

9

Moreover, the evidence demonstrates that, according to Manitowoc's historical practice, it was the responsibility of the selling distributor to convey any warning in the service bulletins to their purchasers. Keith Alan Crider, Manitowoc's regional business manager for the Northeast United States and Eastern Canada, testified that the distributor in whose territory a crane is located is responsible for performing mechanical or diagnostic repairs at any given time as per the distributorship agreement. However, he further clarified that it is still the sole responsibility of the selling distributor to provide the crane owner with manufacturer updates, including service bulletins. His testimony is consistent with that given by Manitowoc's corporate witness who also stated that Manitowoc expected distributors to contact the owner to whom that they would have sold the cranes.

In its pleadings, Manitowoc made similar recitations of its policy, repeatedly stating: "Manitowoc relied on its distributors to identify the Model 888 cranes with free fall mechanisms that the distributors sold, and to contact the owners of those cranes." Therefore, H&E argues that Plaintiffs/Intervenors cannot prove the existence of a legal duty owed to them by H&E under the circumstances of this case.

Whether a particular defendant owes a duty to a particular plaintiff is a question of law. *Lemann*, 923 So.2d 627. In deciding this issue, our supreme court has advised that "the ease of association between the duty owed and the risk encountered is a proper focus of inquiry in finding the existence of a duty." *Socorro v. City of New Orleans*, 579 So.2d 931, 939 (La.1991).

It is undisputed that H&E never owned, sold, or inspected the crane. There is also no dispute that H&E performed only one repair on the crane, fifteen months before the accident, involving an unrelated electrical issue in the cab. While

10

it is further undisputed that H&E was both a distributor and service provider for Manitowoc and its cranes, that fact does not, in and of itself, prove the existence of the duty advanced by Plaintiffs/Intervenors. Rather, the evidence demonstrates that, pursuant to Manitowoc's historical practice as testified to by several witnesses, the Coast Crane Company, the original distributor of the crane, had the duty to warn the owner of the crane, not H&E. The crane was not even in H&E's territory when the service bulletin was issued.

Moreover, the evidence further reveals that H&E did not breach any obligation under its distributorship agreement in relation to its one interaction with the crane—the diagnosing and repair of the unrelated electrical issue in the cab. H&E was never advised of a problem with the freefall mechanism in this crane and was never asked to inspect the crane regardless. Significantly, its one service call was performed eight years after the issuance of Service Bulletin 90.

As the trial court found, the evidence, rather than supporting Plaintiffs'/Intervenors' allegations, demonstrates no ease of association between the collapse of the crane and resulting damages and H&E's alleged failure to warn of or perform the Service Bulletin 90 inspection some eight years after the issuance of the bulletin. In light of the record evidence, we conclude that H&E did not owe Plaintiffs/Intervenors a legal duty under the circumstances of this case. Accordingly, we find that H&E is entitled to judgment as a matter of law, and we affirm the trial court's judgment.

11

## V.

## __CONCLUSION__

For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of H&E Equipment Services, Inc. and Travelers Property and Casualty Company of America is affirmed.

Costs of this appeal are assessed to the Plaintiffs/Intervenors/Appellants.

**AFFIRMED.**