# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-833

BETTY SUE DELCAMBRE
JOSEPH DELCAMBRE

VERSUS

TONY MANCUSO, IN HIS CAPACITY AS
THE SHERIFF OF CALCASIEU PARISH, ET AL.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2017-1653
HONORABLE DAVID ALEXANDER A. RITCHIE, DISTRICT JUDGE

**********

## CANDYCE G. PERRET
## JUDGE

**********

Court composed of John D. Saunders, Van H. Kyzar, and Candyce G. Perret, Judges.

**AFFIRMED IN PART, REVERSED IN PART.**

**Adam P. Johnson**
**The Johnson Firm**
**Post Office Box 849**
**Lake Charles, LA 70601**
**(337) 433-1414**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Betty Sue Delcambre**
    **Joseph Delcambre**

**Shayna L. Sonnier**
**Hunter, Hunter & Sonnier LLC**
**1807 Lake Street**
**Lake Charles, LA 70601**
**(337) 436-1600**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Betty Sue Delcambre**
    **Joseph Delcambre**

**Robert C. McCorquodale**
**In-House Counsel**
**Calcasieu Parish Sheriff's Office**
**1011 Lakeshore Drive, Suite 203**
**Lake Charles, LA 70601**
**(337) 491-3622**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Tony Mancuso, Sheriff of Calcasieu Parish**
    **Leslie Blanchard**
    **John Melton**

**PERRET, Judge.**

This matter involves Betty Sue Delcambre's and Joseph Delcambre's ("the Delcambres") claims for damages against Tony Mancuso, in his official capacity as Calcasieu Parish Sheriff, Leslie Blanchard, and John Melton, both individually, and in their official capacities as deputies with the Calcasieu Parish Sheriff's Office ("CPSO"), (collectively referred to as "Defendants"). The Delcambres appeal the trial court's grant of partial summary judgment in favor of Defendants, which dismissed the Delcambres' claims associated with an intentional tort, including their claims of abuse of process and intentional infliction of emotional distress. On appeal, we affirm in part and reverse in part.

**FACTUAL AND PROCEDURAL BACKGROUND:**

In 2011, Eric Sheeley ("Mr. Sheeley"), Mrs. Delcambre's previous employer at Surfaces Design Gallery, discovered information leading him to believe that Mrs. Delcambre misappropriated funds from his business. He thereafter instituted a civil suit. In 2015, Mr. Sheeley learned of additional information regarding the theft and filed a criminal complaint alleging that Mrs. Delcambre misappropriated the funds. The complaint was assigned to John Melton ("Det. Melton") who was a detective in the property and financial crimes division. After completing his investigation, Det. Melton submitted the case to the District Attorney's office. The District Attorney's office instructed Det. Melton to obtain a warrant. Det. Melton presented an Affidavit for Arrest Warrant and an Arrest Warrant to Judge Canaday, which were signed on April 20, 2016.

On April 22, 2016, at approximately 8:29 a.m., Det. Melton emailed the arrest warrant to Leslie Blanchard ("Lt. Blanchard"), who at the time was a lieutenant supervising detectives in the violent crimes division. Lt. Blanchard then

forwarded the arrest warrant to Detective Travis Lavergne ("Det. Lavergne") at 8:46 a.m. Det. Lavergne allegedly spotted Mrs. Delcambre around 8:50 a.m., and conducted a plate inquiry at 8:51 a.m. At 8:55 a.m., Deputy Aaron Shelton stopped Mrs. Delcambre's vehicle.[1] At 9:10 a.m. Mrs. Delcambre was arrested.

Mrs. Delcambre was booked in the Calcasieu Parish Jail that morning. A CPSO Press Release form was filled out by Det. Melton and provided to his supervisor, Lieutenant Rick Burrell ("Lt. Burrell"), and Kim Myers, at 10:59 a.m. The press release was provided to the media and Mrs. Delcambre's arrest and picture were aired on the local news. Mrs. Delcambre's charges were rejected in August 2016, by the District Attorney's office after it was determined that the charges had prescribed.

On April 24, 2017, the Delcambres filed suit against Defendants alleging that Mrs. Delcambre's arrest was part of a plan concocted by Lt. Blanchard to seek revenge on Mrs. Delcambre for denying his son access to the pre-school at St. Luke-Simpson UMC Childcare Center, where Mrs. Delcambre was the Executive Director in 2015. In addition to allegations of negligence, the Delcambres alleged that Lt. Blanchard and Det. Melton conspired to coordinate Mrs. Delcambre's arrest and the issuance of the press release in order to intentionally inflict emotional distress upon Mrs. Delcambre. Further, their petition alleges that Lt. Blanchard and Det. Melton "conspired with one another for purposes of abusing the rights and abusing [the] process against" Mrs. Delcambre "to exact retribution" and to "publicly humiliate" her.

---

[1] Det. Lavergne was in an unmarked vehicle and, therefore, could not stop Mrs. Delcambre.

On October 17, 2017, Defendants filed a Motion for Partial Summary Judgment, requesting that the Delcambres' claims with respect to intentional torts be dismissed and stricken from the petition. In support of their motion, Defendants attached affidavits from Mr. Sheeley, Lt. Burrell, Lt. Blanchard, and Det. Melton. Defendants also submitted the Offense Report Checklist; CPSO Offense Report Receipt; an April 13, 2016 DA Review accepting the case and instructing that a warrant be obtained; the Affidavit for Arrest Warrant; Arrest Warrant; Bail Order; CPSO Press Release Form; a second DA Review dated August 11, 2016, identifying the charges as prescribed; and the Delcambres' discovery responses admitting that they have no documents evidencing that Defendants had actual, prior knowledge that the charges had prescribed.

In opposition, Plaintiffs submitted several discovery responses from Defendants, the email chain of the Arrest Warrant, a letter from the Blanchards to St. Luke-Simpson United Methodist Church asserting that they would be pursuing a claim for personal injuries for the events surrounding their son's dismissal from daycare, a response letter from the church stating it knows of no damages or embezzlement suffered by anyone, and the Detail Call for Service Report from the CPSO.

In his affidavit, Mr. Sheeley confirmed that Lt. Blanchard played no role in his decision to file charges against Mrs. Delcambre and that it was Bill Hamber ("Mr. Hamber") who encouraged him to file charges. Although Lt. Blanchard does admit that Mr. Hamber told him to discuss potential charges with Mr. Sheeley, Mr. Sheeley does not recall such a meeting and confirms that Lt. Blanchard was not the reason he decided to press charges.

Lt. Burrell attested that Lt. Blanchard was not in Det. Melton's chain of command, that Det. Melton completed his investigation and obtained the warrant and press release all according to the CPSO's procedure, and that he is confident that Lt. Blanchard played no role in supervising the investigation.

Lt. Blanchard acknowledged the daycare occurrence with Mrs. Delcambre in his affidavit, explaining that he and his wife did make complaints to the church daycare. He further explained that when he learned charges were filed against Mrs. Delcambre by Mr. Sheeley, he notified Det. Melton that there may be additional charges against Mrs. Delcambre filed by the church/daycare. Lt. Blanchard denied participating in Det. Melton's investigation. Once the warrant was issued, Det. Melton emailed the warrant to Lt. Blanchard. Lt. Blanchard attests that he was not aware that the charges had prescribed. He does admit in discovery responses that he was disciplined for his involvement in the execution of the warrant, however the reason for the disciplinary measures is not further explained.

Lastly, Det. Melton denied coordinating with Lt. Blanchard and denied that Lt. Blanchard participated in his investigation. Det. Melton confirmed that Lt. Blanchard only notified him that an additional charge against Mrs. Delcambre may be forthcoming. Det. Melton explained that, because Lt. Blanchard had mentioned another possible victim, when the warrant came through, Det. Melton sent Lt. Blanchard a copy. Det. Melton completed the press release according to CPSO procedure.

In support of the Delcambre's case, Det. Melton's discovery responses indicate that it was "not really" normal for Det. Melton to send a homicide detective arrest warrants dealing with theft. Additionally, Lt. Blanchard explains that he was sent the arrest warrant because he told Det. Melton, on a prior occasion,

4

to send the warrant to him because Mrs. Delcambre lived outside the parish and he could assist in facilitating the arrest. The morning of Mrs. Delcambre's arrest, Lt. Blanchard also admitted to talking to Det. Lavergne at least twice, and that he sent Det. Lavergne the warrant to facilitate Mrs. Delcambre's arrest.

Defendants submitted a reply brief, attaching two exhibits: an affidavit of Pastor Frank Harris, III, of the church, and a letter from the daycare signed by Mrs. Delcambre dismissing the Blanchards' son from the school and notifying them of a refund.

At the partial summary judgment hearing, wherein all exhibits were admitted into evidence over the objections of the Delcambres,[2] the trial court granted Defendants' partial summary judgment. The trial court found that the Delcambres failed to carry their burden in proving intentional infliction of emotional distress and referred to the high burden set forth in *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La.1991). Additionally, the court found that Mr. Sheeley had a valid complaint against Mrs. Delcambre and, regardless of Lt. Blanchard's involvement in facilitating the arrest, Det. Melton completed his investigation and obtained a warrant after the District Attorney's office reviewed the case and instructed him to do so. Therefore, the trial court found no abuse of process.

The Delcambres appealed the trial court's ruling and this court dismissed the appeal without prejudice on July 18, 2018, under docket number 18-391, for failing to appeal a final judgment. Defendants then filed a Motion and Order to Designate Partial Summary Judgment as Final Appealable Judgment, which was signed. This appeal follows.

---

[2] The Delcambres objected to the trial court admitting the exhibits attached to Defendants' reply brief.

5

On appeal, the Delcambres assert two assignments of error: (1) that the trial court erred in granting Defendants' Motion for Partial Summary Judgment regarding their abuse of process claim,[3] and (2) that the trial court erred in admitting into evidence the two exhibits attached to Defendants' reply brief.

**STANDARD OF REVIEW:**

On appeal, an appellate court reviews a trial court's judgment on a motion for summary judgment de novo, "using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate." *Gray v. Am. Nat. Prop. & Cas. Co.*, 07-1670, p. 6 (La. 2/26/08), 977 So.2d 839, 844 (quoting *Supreme Serv. & Specialty Co., Inc. v. Sonny Greer*, 06-1827, p. 4 (La. 5/22/07), 958 So.2d 634, 638). The motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).

Louisiana Code of Civil Procedure Article 966(D)(1) sets forth the burden of proof:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

Additionally, this court has explained:

---

[3] In their appellate brief, the Delcambres state, "The trial court ruled on Defendant's [sic] intentional infliction of emotional distress claim (paragraph 23 above) and Plaintiffs do not take issue with that portion of the trial court's ruling."

6

A genuine issue of material fact exists "if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue." In determining whether a material factual dispute exists, a court should consider all of the record evidence but must refrain from determining the merits, making credibility determinations, and evaluating testimony. All doubts are resolved in favor of the non-moving party.

*Walker v. Manitowoc Co., Inc.*, 17-1014, p. 5 (La.App. 3 Cir. 10/10/18), 259 So.3d 480, 484 (citations omitted).

## DISCUSSION:

Reply Exhibits in Support of Summary Judgment:

Louisiana Code of Civil Procedure Article 966(B)(3) states: "No additional documents may be filed with the reply memorandum." *See also Baez v. Hosp. Serv. Dist. No. 3 of Allen Par.*, 16-951 (La.App. 3 Cir. 4/5/17), 216 So.3d 98; *Tate v. Kristina's Transp., LLC*, 18-955 (La.App. 1 Cir. 12/21/18) (unpublished opinion). Clearly, the exhibits attached to Defendants' reply brief were not permitted. Therefore, it was error for the trial court to admit the affidavit of Pastor Frank Harris, III, and the letter from the daycare dismissing the Blanchards' son from the school and notifying them of a refund. We, therefore, reverse that ruling and will not consider those documents in our de novo review.

Abuse of Process:

Louisiana has recognized abuse of process as a compensable tort under La.Civ.Code art. 2315. *Hebert v. La. Licensed Prof'l Vocational Rehab. Counselors*, 07-610 (La.App. 3 Cir. 3/4/09), 4 So.3d 1002. The elements of an abuse of process cause of action are: "(1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not in the regular prosecution of the proceeding." *Id*. at 1009. The second circuit has stated that "[u]nder this cause of

action plaintiffs must allege irregularity in the process itself[.]" *Mini-Togs, Inc. v. Young*, 354 So.2d 1389, 1391 (La.App. 2 Cir. 1978).

More specifically, "an abuse of process occurs '[w]hen the actor employs legal process in a manner technically correct, but for a wrongful and malicious purpose to obtain an unjustifiable end or an object which it was not the purpose of the particular process employed to effect.'" *Hebert*, 4 So.3d at 1009 (*quoting*, Law of Torts, Volume 1, § 4.9 at p. 330, Harper and James). Additionally, the fourth circuit explained, "Abuse of process involves the misuse of a process already legally issued whereby a party attempts to obtain a result not proper under the law. At issue in such actions is the intent to use a legal process for an improper reason[.]" *Goldstein v. Serio*, 496 So.2d 412, 415 (La.App. 4 Cir. 1986), *writ denied*, 501 So.2d 209 (La.1987) and 501 So.2d 208 (La.1987)(citations omitted). Therefore, if the process is "used to redress a legal wrong, the person who invoked the legal process cannot be said to have committed any tort, even if his motive was vicious or vindictive." *Id*. But, "when he seeks by the use of such process to 'attain some collateral objective, outside the scope of the operation of the process employed,' a tort arises." *Id*.

In *Hebert*, 4 So.3d 1002, this court initially found that the plaintiff's petition stated a cause of action for abuse of process because the petition set forth an ulterior motive for instituting a legal process. Mr. Hebert was hired by an employee to review the work of Mr. Arceneaux, who was providing the employee's vocational rehabilitation services. Mr. Hebert found Mr. Arceneaux's work to be below acceptable standards and notified the employee of his findings. Mr. Arceneaux filed a complaint against Mr. Hebert with the Louisiana Licensed Professional Vocational Rehabilitation Counselors Board of Examiners, which

found that Mr. Hebert violated an ethics rule and reprimanded Mr. Hebert. Mr. Hebert filed a petition asserting, among other things, that Mr. Arceneaux and the Board "conspired through an abuse of process to obtain ethical action by way of an ethical complaint." *Id*. at 1005.

However, Mr. Hebert's abuse of process claim was later dismissed on summary judgment. *Hebert v. La. Licensed Prof'l Vocational Rehab. Counselors Bd. of Examiners*, 14-102 (La.App. 3 Cir. 11/5/14) (unpublished opinion), *writ denied*, 14-2555 (La. 2/27/15). On appeal, this court affirmed and noted that Mr. Arceneaux provided exhibits proving he filed an ethical complaint with the Board and testified at the hearing. Mr. Hebert then "failed to carry his burden to provide any evidentiary support for his claim that the administrative process had been improperly manipulated by Mr. Arceneaux[,]" nor did he submit evidence to support the "ulterior purpose element." *Id*. at p. 7. Likewise, the Board proved through exhibits that it followed each procedural step required when an ethical complaint is filed in order to abide by its statutory obligation to adopt and enforce an ethics code. Mr. Hebert then failed to submit any evidence that "there was an aberration in the proceedings" to support his claim for abuse of process. *Id*. Therefore, summary judgment was proper.

In contrast, a successful abuse of process claim is demonstrated in *Eicke v. Eicke*, 517 So.2d 1067 (La.App. 3 Cir. 10/7/87), where a mother waited to institute visitation termination proceedings in order to prevent her children's Christmas visitation with their paternal grandparents. In *Eicke*, the grandparents maintained a court-ordered visitation with the children. Several days before Christmas, the mother filed a rule to terminate the grandparents' visitation. The grandparents were not notified of the proceedings until the grandfather flew from Texas to

Louisiana and appeared at the mother's residence to collect the children for their visitation. The grandparents answered the petition and asserted, among other things, damages for the mother's conduct. The trial court found that "the [mother] improperly misled the trial court into issuing an ex parte order through the use of verified pleadings which were not supported by the evidence." *Id.* at 1072. The basis for the mother's petition to terminate visitation was that the grandparents allowed the children in July to stay the night with their biological father, who had previously abducted them. The mother learned of this information in July, however, waited until one week before Christmas to have the ex parte order issued, despite having a conversation with the grandfather in November regarding the Christmas visitation arrangement. Therefore, the court found, and the third circuit agreed, that the mother's institution of the proceedings "'was obviously designed to obstruct visitation at Christmas, not to seek resolution of the issue.'" *Id.*

In this case, the Delcambres argue that Lt. Blanchard wanted retribution because Mrs. Delcambre dismissed his child from daycare, and that Det. Melton conspired with Lt. Blanchard to achieve that end. Additionally, the Delcambres argue that the issue of intent cannot be decided on summary judgment. However, the Delcambres must show they will be able to prove both elements of an abuse of process claim. We find that the Delcambres cannot do so.

"While the existence of an ulterior motive may, perhaps, be inferred from the fact that the process has been misused or misapplied, the reverse is not true, for if the act of the prosecutor is in itself regular, the motive, ulterior or otherwise, is immaterial." *Mini-Togs*, 354 So.2d at 1390. The Delcambres have not shown that there was anything irregular in the process of Det. Melton investigating Mr. Sheeley's claims of theft or in the issue of the warrant. Mr. Sheeley denied any

10

involvement by Lt. Blanchard in his decision to file a criminal complaint and Det. Melton has denied that Lt. Blanchard influenced his investigation. The Delcambres have not produced any evidence to the contrary. Det. Melton obtained a valid Arrest Warrant for Mrs. Delcambre, which was effectuated. Although Lt. Blanchard did assist in facilitating her arrest, there is no evidence that him doing so was specifically prohibited. Det. Melton's discovery responses merely indicate that sending Lt. Blanchard the warrant was "not really" normal procedure, but there is no evidence that it was improper procedure for a lieutenant to assist in facilitating a valid arrest. Additionally, unlike the cases discussed above, Lt. Blanchard did not initiate a legal process to obtain a collateral objective. Mr. Sheeley filed a claim and that claim was investigated by Det. Melton. The Delcambres failed to present any factual support sufficient to create a genuine issue of material fact regarding Lt. Blanchard and an abuse of process claim.

As to Det. Melton, the Delcambres have not provided evidence of either element of an abuse of process. Defendants set forth facts that Det. Melton was not influenced by Lt. Blanchard and conducted his own investigation of a claim by a private citizen. Although Det. Melton acknowledges he was aware Lt. Blanchard had some issues with the daycare, there is no evidence to suggest that Det. Melton proceeded with this investigation in order to conspire in exacting revenge with Lt. Blanchard. Det. Melton stated he did not know that Lt. Blanchard would facilitate the arrest. The Delcambres did not present any factual support sufficient to establish the existence of a genuine issue of material fact regarding Det. Melton.

**CONCLUSION**:

Based on the foregoing, we reverse the trial court's decision to admit the affidavit of Pastor Frank Harris, III, and the letter from the daycare, which were

11

attached to Defendants' reply brief.  However, after a de novo review, we affirm the trial court's grant of partial summary judgment in favor of Defendants. Appellants, Betty Sue Delcambre and Joseph Delcambre are cast with the costs of this appeal.

**AFFIRMED IN PART, REVERSED IN PART.**